**SIGNET CONSTRUCTION CORPORA-
TION, Plaintiff-Appellant,**

v.

**Nicholas E. BORG, Hal Halderson and
Board of Education of the City of
New York, Defendants-Appellees.**

**No. 67, Docket 85–7338.**

United States Court of Appeals,
Second Circuit.

Argued Aug. 30, 1985.

Decided Oct. 15, 1985.

Sheldon Feinstein, Flushing, N.Y., for appellant.

Karen Hutson, New York City (Frederick A.O. Schwarz, Jr., Corp. Counsel, City of New York, Pamela Seider Dolgow, New York City, of counsel), for appellees.

Before MANSFIELD, CARDAMONE and PIERCE, Circuit Judges.

MANSFIELD, Circuit Judge:

Plaintiff Signet Construction Corporation (Signet) appeals from an order and judgment of the Eastern District of New York (I. Leo Glasser, *Judge*) granting summary judgment dismissing its claim under Title 42 U.S.C. § 1983 that defendants Borg and Halderson violated its Fourteenth Amendment due process rights by withholding payments due it under contracts with the Board of Education of the City of New York (Board), a corporate division of the State of New York, and by wrongfully and intentionally driving it out of business.[1] Upon this appeal Signet contends that the district court erred in holding that its due process rights were not violated by the defendants' failure to accord it a pre-deprivation hearing. We affirm.

Signet, a concern engaged in general construction work, has for many years bid on and received awards from the Board for the construction, renovation and maintenance of New York City school buildings. Pursuant to § 100 *et seq.* of the New York State General Municipal Law,[2] § 2556 of the New York State Education Law,[3] the Board's By-Laws, and § 345 of the New York City Charter,[4] the Board's Division of School Buildings (DSB) solicits bids, awards school construction and repair contracts, and supervises the performance by contractors of work under their contracts on the City's school buildings. Defendant Nicholas E. Borg is the Executive Director of the DSB and defendant Hal Halderson is a Senior Project Coordinator who acts under Borg's direction. Both were in charge of supervising and monitoring performance of work by contractors to whom such contracts were awarded.

---

1. In the district court Signet voluntarily dismissed its claims under 42 U.S.C. §§ 1981 and 1985 based on the same facts as its § 1983 claim. Signet also consented to dismissal of its claim against the Board as pleaded for failure to satisfy the requirements of *Monell v. Department of Social Services*, 436 U.S. 658, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978), as interpreted by us in *Batista v. Rodriguez*, 702 F.2d 393 (2d Cir. 1983), but asked leave to replead, which was denied in view of the court's dismissal on the merits of its claims against Borg and Halderson.

2. Sections 100 through 109–b of the General Municipal Law (McKinney 1977 & Supp. 1984–85) outline procedures governing awards of public contracts, requiring public advertisements for bids of more than $7,000 for public work and those of more than $5,000 for purchase contracts.

3. Section 2556(1) of the New York Education Law authorized the Board of Education to "purchase, repair, remodel, improve or enlarge school buildings or other buildings or sites, and to construct new buildings...." Subdivision 10 of § 2556 requires the Board of Education to let all contracts for public work to the lowest responsible bidder. N.Y.Educ.Law § 2556 (McKinney 1981).

4. Section 345 of the New York Charter, 1 Administrative Code of the City of New York, prescribes procedures for declaring that anyone who defaults on an obligation of $5,000 or more to the City becomes ineligible as a responsible bidder for three years.

The present lawsuit arose out of action taken by the Board with respect to Signet's failure to perform work in accordance with various contracts awarded to it by the Board. In one instance Signet was awarded a contract for the installation of exterior hollow metal doors at the Bronx High School of Science. Although Signet's contract required it to complete the installation by September 10, 1982, Signet had not even commenced work on the contract by that date. Inspection of work done by Signet under other contracts with the DSB, including a contract for installation of partitions in another school, revealed that Signet was not completing work according to its contract schedules. In these instances there were some conferences, during the period agreed upon for performance, between representatives of the DSB and of Signet with respect to the alleged inadequacy of Signet's performance, which gave Signet the opportunity to explain its deficiencies. At no time has Signet denied defendants' statement of uncontested facts in support of their summary judgment motion, made pursuant to Rule 3(g) of the Eastern District of New York Civil Rules, to the effect that "Signet failed to perform, performed improperly or failed to complete performance on several of its contracts with the Board" and that "disputes arose between Signet and Board employees concerning various aspects of their contract performance, and the amounts owed to Signet by the Board." Instead, Signet has claimed that the defendants, by wrongfully withholding money due it for work performed, deprived it of the cash flow needed to complete performance of its contracts with the Board and thus drove it out of business.

As a result of Signet's failure to perform the Bronx High School of Science door contract, default proceedings were commenced in November 1983 against Signet pursuant to § 8.3 of the Board's By-Laws and Articles 21 and 22 of the Board's contract with Signet.[5] Section 8.3 authorizes the Chancellor, in matters concerning bidder eligibility and contract performance, to

act through a Board of Review (BOR), which in turn is authorized to conduct hearings to determine whether a contractor is in default on its contract and, if so, to declare the contractor in default, which renders the contractor ineligible for three years thereafter to bid on new Board contracts. Articles 21 and 22 of Signet's contract contain the following pertinent provisions:

## "DEFAULT

"Art. 21. The Board shall have the right to declare The Contractor in default on the whole or any part of the work....

\*   \*   \*   \*   \*   \*

"3. If the Contractor fails to commence work when notified to do so by The Director or if The Contractor shall abandon the work; or if The Contractor refuses to proceed with the work when and as directed by The Director;

\*   \*   \*   \*   \*   \*

"Art. 22. The Board will declare The Contractor to be in default under the provisions of Art. 21 by having served upon The Contractor a notice from the Secretary of The Board of Education signed by the Secretary or Assistant Secretary indicating that The Contractor has been declared in default by the Board of Review acting for the Chancellor under delegation of authority. The Board shall thereupon have the power to take immediate possession of and use such Materials, molds, models, centers, scaffolding, planks, horses, derricks, tackle, tools, implements, power plants as may be found upon the premises and line of Work and the same shall not be removed so long as the same may be needed for the Work."

As requested by the DSB, a BOR was convened and in December 1983 it held hearings at which the Board and Signet, which was represented by counsel, presented evidence, including testimony and documents. Witnesses were examined and

---

**5.** Under § 8.3 of the Board of Education By-Laws only the Board of Review or the Chancellor has the authority to declare Signet in default for failure to perform its contracts.

cross-examined and the proceedings were recorded and transcribed. On February 8, 1984, the BOR rendered a decision finding Signet in default. On February 23, 1984, Signet commenced an Article 78 proceeding under N.Y.C.P.L.R. § 7801 *et seq.* in the New York Supreme Court, Kings County, for review of the BOR's decision. This action was transferred pursuant to N.Y.C.P.L.R. § 7804(g) to the Appellate Division, Second Department, for de novo consideration.

On May 18, 1984, Signet instituted the present action in the Eastern District of New York, claiming that in violation of 42 U.S.C. §§ 1981, 1983 and 1985 defendants Borg and Halderson had conspired to interfere with its Fourteenth Amendment right to do business with the Board by withholding payments due it and by forcing it out of business (First Cause of Action). Signet also claimed that the Board had violated its rights by declaring Signet ineligible to bid on Board contracts, without justification and in furtherance of the alleged Borg-Halderson conspiracy (Second Cause of Action). Signet seeks compensatory and punitive damages.

Defendants moved for summary judgment dismissing the complaint [6] and at a hearing on November 30, 1984, at which plaintiff withdrew its claims based on §§ 1981 and 1985, Judge Glasser granted the motion. In an oral bench opinion he expressed the view that the case was governed by the Supreme Court's decision in *Hudson v. Palmer,* —— U.S. ——, 104 S.Ct. 3194, 82 L.Ed.2d 393 (1984), which held that a state employee's intentional but unauthorized deprivation of a person's property right does not violate that person's procedural due process rights if adequate state post-deprivation remedies are available. With respect to Signet's claim based on the alleged failure to make timely payments to Signet on its contracts and the alleged refusal to award it new contracts as a means of depriving it of its right to conduct business with the Board, Judge Glasser held that Signet had an adequate remedy through a state court breach of contract suit or through an Article 78 proceeding under N.Y.C.P.L.R. § 7801 *et seq.* This appeal with respect to defendants Borg and Halderson followed.

## DISCUSSION

It is not disputed by the parties that a contractor's right to timely payment for work done under its contract with a state agency constitutes a property interest, deprivation of which by the Board without procedural due process would violate its Fourteenth Amendment rights. *Oberlander v. Perales,* 740 F.2d 116, 120 (2d Cir. 1984); *cf. Wilkerson v. Johnson,* 699 F.2d 325, 328 (6th Cir.1983). Nor is there any question about the fact that the Board, before declaring Signet in default on account of its failure to render timely performance of the door contract, accorded it a full hearing with procedural rights, including notice, an opportunity to present evidence and to cross-examine witnesses for the DSB, following the latter's alleged wrongful withholding of contract payments. The principal issue on this appeal is whether Signet was entitled under the Fourteenth Amendment to a hearing *before,* rather than after, the defendants allegedly deprived it of its property by withholding payments due it under its contracts with the Board and by using the default

---

**6.** The motion, although asking "for an order dismissing the complaint for failure to state a claim upon which relief can be granted and for such other and further relief as this Court deems just and proper," was accompanied by a statement of uncontested facts pursuant to Rule 3(g) of the Civil Rules of the Eastern District of New York and the affidavit of Nicholas Borg, which converted it into a motion for summary judgment. See Rule 12(b)(6), Fed.R.Civ.P.

At the subsequent district court hearing Signet, although characterizing the motion as one only for dismissal on the face of the complaint after the defendants had described it as one for summary judgment, did not ask to file any additional papers or for additional time to do so, thus waiving any objection to its being treated as a summary judgment motion. In any event, Signet has not disputed the material facts upon which the district court's disposition was predicated.

proceedings to prevent it from gaining new business from the Board.

As the Supreme Court stated in *Logan v. Zimmerman Brush Co.*, 455 U.S. 422, 433–34, 102 S.Ct. 1148, 1156–57, 71 L.Ed.2d 265 (1982):

> "As our decisions have emphasized time and again, the Due Process Clause grants the aggrieved party the opportunity to present his case and have its merits fairly judged. Thus it has become a truism that '*some* form of hearing' is required before the owner is finally deprived of a protected property interest. *Board of Regents v. Roth*, 408 U.S. [564] at 570–71, n. 8 [92 S.Ct. 2701, 2705–06 n. 8, 33 L.Ed.2d 548 (1972)] (emphasis in original).... To put it as plainly as possible, the State may not finally destroy a property interest without first giving the putative owner an opportunity to present his claim of entitlement. See id. [*Bell v. Burson*, 402 U.S. 535], at 542 [91 S.Ct. 1586 at 1591, 29 L.Ed.2d 90 (1971)].
>
> "On the other hand, the Court has acknowledged that the timing and nature of the hearing 'will depend on appropriate accommodation of the competing interests involved.' *Goss v. Lopez*, 419 U.S. [565] at 579 [95 S.Ct. 729, 738, 42 L.Ed.2d 725]. (footnotes omitted)."

Experience teaches that what is fundamentally fair in terms of the form and time of the notice and hearing must of necessity depend on circumstances that will vary from case to case. No rigid, inflexible formula will fit all situations. Although the aim of a due process hearing, to protect an individual against loss of liberty or property at the hands of a state, might in the best of all possible worlds be guaranteed by requiring that there always be a judicial or quasi-judicial proceeding, complete with examination and cross-examination of witnesses, argument, briefing, and written findings, before the deprivation of property may occur, we have long recognized that in some circumstances such a procedure would be impractical, impossible, wasteful or unnecessary. Situations may occur where, given the burden a formal proceeding would impose, the nature of the interests at stake, the time limit for state action, and other circumstances, an informal nonjudicial hearing will suffice, *see, e.g., Goss v. Lopez*, 419 U.S. 565, 582–84, 95 S.Ct. 729, 740–41, 42 L.Ed.2d 725 (1975) (requiring "informal give and take" prior to suspending student from public school), whereas in other circumstances a more formal proceeding may be essential, *see, e.g., Goldberg v. Kelly*, 397 U.S. 254, 90 S.Ct. 1011, 25 L.Ed.2d 287 (1970) (requiring impartial decision-maker, examination and cross-examination of witnesses, and decision based on the record prior to termination of public assistance).

The timing of a hearing must likewise depend on circumstances and exigencies which may vary from case to case. Although we have described a hearing as a "root requirement" of due process, *see Patterson v. Coughlin*, 761 F.2d 886, 892 (2d Cir.1985), we have recognized that a predeprivation hearing may not be required when a state could not reasonably have been expected to anticipate the deprivation or to act with respect to it before it occurs, *see, e.g., Hudson v. Palmer, supra* (state prison guard's intentional but unauthorized and unanticipated destruction of plaintiff-prisoner's property), or when no reasonable opportunity to provide such a hearing existed. *Parratt v. Taylor*, 451 U.S. 527, 543–44, 101 S.Ct. 1908, 1916–17, 68 L.Ed.2d 420 (1981) (pre-deprivation hearing not required where property of plaintiff, a prisoner, was negligently destroyed and state afforded plaintiff a post-deprivation procedure to recover loss attributable to tortious conduct on the part of guards); *see Hart & Wechsler, The Federal Courts and the Federal System*, 234–36 (2d ed. 1981 Supp.). The relevance of state remedies for this limited purpose does not impinge upon the rule that exhaustion of state remedies is not a prerequisite to a § 1983 suit. *Patsy v. Board of Regents*, 457 U.S. 496, 102 S.Ct. 2557, 73 L.Ed.2d 172 (1982).

■ The nature and timing of the hearing to which a person is entitled as a matter of due process thus requires the court

to weigh various factors: (1) the nature of the private and state interests involved, (2) the extent of the risk that without a hearing the plaintiff might erroneously be deprived of property and the value of a prompt hearing as a safeguard against that risk; (3) whether the state has a reasonable opportunity to provide a hearing before the deprivation occurs, and (4) the extent of the administrative burden on the state of being required to provide a formal rather than an informal hearing. *Cf. Mathews v. Eldridge*, 424 U.S. 319, 335, 96 S.Ct. 893, 903, 47 L.Ed.2d 18 (1976).

■ In light of these principles, the district court erred in basing its dismissal of the complaint on *Hudson v. Palmer*. The challenged conduct of Borg and Halderson, withholding work from Signet and disrupting its cash flow, unlike the conduct of the prison guards in *Hudson*, can hardly be characterized as "random" or "unauthorized" by the City. On the contrary, defendants concede that as part of its functions the DSB, headed by Borg, "solicits bids, awards contracts, and supervises the performance of contracts for construction." These official acts, absent any contrary statute or regulation, must be carried out by its officials as part of their prescribed duties and include the authority to delay payment when a contractor fails to perform in accordance with the terms of its contract.

Relying on *Hudson*, the District Court looked exclusively to the adequacy of post-deprivation remedies available to Signet and did not address the full range of criteria which must be weighed in determining what pre-deprivation process might be due. Normally, we might, in view of the erroneous ground upon which the district court based its decision, remand the case for further consideration. The record, however, reveals undisputed facts demonstrating that Signet's claim that as a matter of due process it was entitled to a pre-deprivation evidentiary hearing must be dismissed. When all the relevant factors are considered, it is clear that Signet was accorded all the process that it was due.

The property interest at stake, the right to prompt payment of monies due from the Board, is hardly as compelling or important as the worker's right to disability payments in *Mathews v. Eldridge, supra*, where the right to a pre-deprivation hearing was denied, or the indigent's right to public assistance in *Goldberg v. Kelly, supra*, where, since the need for an immediate review could approach an emergency, the Court held that "[i]nformal procedures will suffice," 397 U.S. at 269, 90 S.Ct. at 1021. Moreover, the Board in the present case was entitled to withhold certain percentages of payments to be made under the contracts and it is undisputed that the parties' differences regarding the amounts due under Signet's various contracts with the Board will be resolved in two breach of contract actions for $307,799 commenced by Signet in April and May 1985 in the New York State Supreme Court, Kings County. There is therefore no risk that Signet will be deprived permanently of property without a hearing. In addition, it received a full formal hearing and decision by the Board with respect to its door contract, which is subject to review by the Appellate Division.

It is true that no such formal hearing was conducted before the DSB withheld payments on Signet's other contracts. However, there were numerous meetings and some written exchanges between Signet's representatives and those of the DSB, including Borg, regarding Signet's performance of its contract obligations and modifications of contract terms. Signet submitted to the DSB written reports with respect to work done by it and the DSB staff made on-site inspections. Signet did not lack the opportunity in the course of these informal exchanges to present its side of the story. It does not appear that during these meetings Signet was ever denied the opportunity to discuss payments due or to obtain a meeting with Board representatives to present evidence to the effect that it was entitled to funds being withheld.

It is furthermore evident that providing a contractor such as Signet with a full evidentiary hearing before withholding payments would impose an undue burden on a public administrative process. Since a city must usually act expeditiously when its inspections reveal defects in performance, the proposal for a full formal pre-deprivation hearing would undoubtedly cause delays. In the meantime the city would be forced to make payments that may not properly be due and later find itself, after a hearing, unable to obtain recoupment.

After taking into account and balancing the relevant factors bearing on the type of process to which Signet was entitled, we are satisfied that the combination of (1) informal exchanges before the alleged excessive withholding of monies claimed to be due, (2) the formal proceedings required before Signet could be declared in default and ineligible to bid on further contracts for three years, and (3) the availability of state court remedies for review of alleged improper Board action, which were in fact utilized by Signet, was adequate to insure Signet due process in accordance with the Fourteenth Amendment. As we said in *Oberlander, supra:*

> "[W]e decline to attach talismanic significance to the availability of a pre-deprivation evidentiary hearing for this type of claim. Prior to the deprivation, Flatbush Manor had the right to make written submissions on disputed issues of fact and law and had, following the deprivation, procedures available to compel a full-scale evidentiary hearing on its claim." 740 F.2d at 120.

The judgment of the district court is affirmed.