**NEW YORK STATE INSPECTION, SECURITY AND LAW ENFORCEMENT EMPLOYEES, DISTRICT COUNCIL 82, AFSCME, AFL–CIO by its President, John BURKE, and Mario Periero, Randal Napper, Thomas Haley, John Post, James Facteau, Keith Berg, Lee Emery and Gary Canning, Plaintiffs,**

v.

**The NEW YORK STATE PUBLIC EMPLOYMENT RELATIONS BOARD, Harold Newman, as Chairman and a member thereof, Ida Klaus and David C. Randles as members thereof, Hugh Carey, as Governor of the State of New York, Edward V. Regan, as Comptroller of the State of New York, and Meyer Frucher, as Director of the Office of Employee Relations of the State of New York, Defendants.**

No. 81–CV–1165.

United States District Court,
N.D. New York.

Dec. 18, 1985.

Rowley, Forrest & O'Donnell, Albany, N.Y. (Richard R. Rowley, of counsel), for plaintiffs.

Robert Abrams, Atty. Gen. of New York, Albany, N.Y. (Allan S. Kaufman, Asst. Atty. Gen., of counsel), for defendants.

## MEMORANDUM–DECISION AND ORDER

McCURN, District Judge.

This action was brought by plaintiffs New York State Inspection, Security and Law Enforcement Employees, District Council 82 (Council 82) and individual members of Council 82 against defendants New York State Public Employment Relations Board (PERB) and its individual members pursuant to 42 U.S.C. § 1983 for alleged violations of the First and Fourteenth Amendments. Jurisdiction is invoked pursuant to 28 U.S.C. §§ 1331 and 1343. Pres-

ently pending before the court is the defendants' motion for summary judgment.

The act upon which the complaint is based is PERB's imposition of a penalty against Council 82 in the form of an eighteen-month suspension of dues check-off privileges. The penalty was imposed pursuant to New York's Taylor Law, N.Y.Civ. Serv.Law § 200 *et seq.* (McKinney 1983) because of PERB's determination that Council 82 had encouraged and condoned an unprovoked strike in the spring of 1979.

The defendants moved to dismiss the complaint pursuant to Fed.R.Civ.P. 12(b)(6) for failure to state a claim upon which relief can be granted. The court granted the motion with respect to the Second through Eighth Claims for Relief but denied it as to the First Claim, which alleges a due process deprivation, with respect to the following allegations: (1) that PERB members were rendered partial[1] by verbal abuse directed toward them; (2) that PERB members discussed the pending case against Council 82 with PERB attorneys; and (3) that a public statement made by PERB Chairman Harold Newman indicated prejudgment or created the appearance of prejudgment of the case. *New York State Inspection, Security and Law Enforcement Employees, District Council 82, AFSCME, AFL–CIO, et al. v. The New York State Public Employment Relations Board, et al.,* 629 F.Supp. 33 (N.D.N.Y. 1984) (*Council 82 v. PERB*).

Since the earlier decision in this case, the defendants have set forth another issue for the court's determination: whether the availability of an Article 78 proceeding in New York State court would have provided the plaintiffs the due process of which they claim they were deprived by the defendants' actions. *See* N.Y.Civ.Prac.Law § 7801 *et seq.* (McKinney 1981).

FACTS

In December of 1978, Council 82 began bargaining with the New York State Office of Employee Relations over the terms of a new contract that was to succeed a contract due to expire on March 31, 1979. An impasse was declared on or about March 20, 1979 after the parties were unable to reach an agreement. PERB was notified of the impasse, and it assigned two staff members to mediate the dispute.

Negotiating sessions continued over a period of days. At the conclusion of one of the sessions, which ran from April 4 to April 5, 1979, the communications of the PERB staff members led the parties to believe that an oral agreement had been reached. However,

> [A]fter extensive efforts to reduce the [agreement] to writing encompassing some five or more sessions at which PERB provided mediation services...the Union realized on April 13, 1979 that no meeting of the minds had been achieved, and plaintiff Council 82 demanded that the defendant PERB reconvene negotiations.

Amended Complaint at ¶ 49.

The plaintiffs' demand was considered by defendants Newman, Ida Klaus, and David Randles, members of PERB. On April 16, 1979, the Board made what the plaintiffs characterize as "the crucial decision." PERB decided that a complete agreement had been reached by Council 82 and the State; it therefore would not order the resumption of negotiations.

On April 17, Council 82 filed an improper practice charge with PERB alleging that the State was refusing to bargain in good faith. Two days later, the State filed a reciprocal charge with PERB alleging that an agreement had been reached by the parties but had been repudiated by Council 82.

In the meantime, on April 18, a large number of bargaining unit employees failed to report to work. Due to the absence from work of the bargaining unit

---

1. In the court's earlier opinion in this case, the word "impartial" was used when, of course, "partial" was intended.

employees from April 18 to May 5, 1979, PERB Counsel Martin Barr issued a strike charge against Council 82 pursuant to N.Y. Civ.Serv.Law § 210.3(c) (McKinney 1983) on May 29, 1979. The strike charge was ordered to be tried jointly with the two improper practice charges that the parties had previously filed, and the case was assigned to Hearing Officer Robert Miller for fact-finding and recommendation.

In his decision of December 29, 1980, Miller rejected Council 82's contention that an agreement had never been reached and that the strike was provoked. He found:

> In a meeting on April 4 which lasted until the early morning hours of April 5, agreement on all remaining issues was reached "in concept," a majority of the entire union negotiating team having voted its approval.... It was understood by each of the parties that all that remained was to draft the wording of agreement and submit it to the Union membership for ratification.

Hearing Officer's Decision at 4.

Miller further found that when Council 82's negotiators presented the agreement to the members, the reaction was extremely negative. Because of membership pressure, the negotiators repudiated the agreement on April 13, 1979. *Id.* at 5–8. The Hearing Officer also concluded as follows:

> I find that the Union did not engage in, directly cause, or instigate the strike, but that it encouraged and condoned it in violation of § 201.1 of the Act, and that the primary causative factor for the strike was the Union's attempted evasion of its obligations to negotiate in good faith, as to which I find that the Union has violated § 209–a.2(b) of the Act.

*Id.* at 17. The improper practice charge filed by Council 82 against the State was dismissed.

Council 82 filed an appeal to the Board itself, which, on September 24, 1981, affirmed Hearing Officer Miller's findings of fact and conclusions of law. Acting pursuant to N.Y.Civ.Serv.Law § 210.3(f), the Board penalized Council 82 by ordering the following:

> That the dues deduction and agency shop fee privileges, if any, of DC 82 be forfeited, commencing on the first practicable date and continuing thereafter for a period of 18 months. Thereafter no dues or agency shop fees shall be deducted on its behalf until it affirms that it no longer asserts the right to strike against any government, as required by the provisions of CSL § 210.3(g).

Board Decision and Order at 9–10.

One month later, the instant action was filed. The suspension of dues check-off privileges has been stayed by stipulation of the parties pending the outcome of the case.

## DISCUSSION

When considering a motion for summary judgment, a court must insure that there is no genuine issue of material fact, that all reasonable inferences are drawn against the moving party, and that the moving party is entitled to a judgment as a matter of law. Fed.R.Civ.P. 56(c); *Universal City Studios, Inc. v. Nintendo Co., Ltd.*, 746 F.2d 112, 115 (2d Cir.1984); *Quinn v. Syracuse Model Neighborhood Corp.*, 613 F.2d 438, 444–45 (2d Cir.1980).

### I.

The first issue to be addressed is whether PERB members were rendered partial by verbal abuse directed toward them during the course of the strike. Members of Council 82 publicly accused Newman, Klaus, and Randles of lying, of not being neutral, of being incompetent, immoral, unethical, and degenerate. Amended Complaint at ¶ 58. The plaintiffs contend that, because the PERB members were subjected to such verbal abuse, it was impossible for them to decide the Council 82 case with impartiality.

[1] As this court has already made clear, the plaintiffs bear the burden of proving not only that the comments in question were provocative, but that the PERB members were actually provoked. *Council 82 v. PERB*, 629 F.Supp. 33 at 39.

*Hortonville J.S.D. No. 1 v. Hortonville Ed.,* 426 U.S. 482, 491–92, 96 S.Ct. 2308, 2313–14, 49 L.Ed.2d 1 (1976). *See also King v. United States,* 576 F.2d 432, 437 (2d Cir. 1978); *United States v. Wolfson,* 558 F.2d 59, 62 (2d Cir.1978); *In re Union Leader Corporation,* 292 F.2d 381, 389 (1st Cir. 1961) (holding that the mere fact of a strong attack on a judge's ability or character is an insufficient basis for recusal).

■ There is nothing in the record before the court that would, in any way, support the conclusion that the PERB members were provoked by the comments of Council 82's members.

The comments in question were made during the strike in April or May of 1979; PERB did not impose a penalty against Council 82 until September of 1981, at least twenty-eight months later. Furthermore, Newman, Klaus, and Randles have submitted affidavits in which they unequivocally maintain that they were unaffected by the verbal abuse. The PERB members state that none of the comments was made directly to them, that such comments are quite normal in a heated labor dispute, that they have no recollection of hearing the comments, and that they were not provoked. Affidavits of Newman, Klaus, and Randles.

■ The plaintiffs maintain that Newman wrote "PLEASE POST IN MEN'S ROOM" across the top of a telegram that he received from a federal mediator offering assistance in the dispute, and that this statement is sufficient evidence that Newman was provoked. Newman has testified that the writing on the telegram is not his. Newman Deposition at 72. However, because he does not know who else may have had custody of the telegram, the plaintiffs argue that the only conclusion that can be reached is that Newman himself wrote the statement.

The court cannot adhere to the plaintiffs' deductive logic that Newman must have written the statement, especially in light of Newman's assertion that the writing is not

his. Moreover, even if Newman did write the statement, that hardly leads to the conclusion that he, let alone the other two PERB members, was provoked. As the Second Circuit stated in *Quinn:*

> We are not unmindful that, properly employed, summary judgment is a useful device for unmasking frivolous claims and putting a swift end to meritless litigation. *See Donnelly v. Guion,* 467 F.2d 290, 293 (2d Cir.1972); *American Manufacturers Mutual Insurance Co. v. American Broadcasting-Paramount Theatres, Inc.,* 388 F.2d 272, 278 (2d Cir. 1967), *cert. denied,* 404 U.S. 1063, 92 S.Ct. 737, 30 L.Ed.2d 752 (1972); 6 Moore's Federal Practice ¶ 56.–15[1.–0] (2d ed. 1976). Thus, the mere possibility that a factual dispute may exist, without more, is not sufficient to overcome a convincing presentation by the moving party. *See Gatling v. Atlantic Richfield Co.,* 577 F.2d 185, 187–88 (2d Cir. 1978), *cert. denied,* 439 U.S. 861, 99 S.Ct. 181, 58 L.Ed.2d 169 (1979). The litigant opposing summary judgment, therefore, "may not rest upon mere conclusory allegations or denials" as a vehicle for obtaining a trial. *SEC v. Research Automation Corp.,* 585 F.2d 31, 33 (2d Cir. 1978). Rather, he must bring to the district court's attention some affirmative indication that his version of relevant events is not fanciful.

*Id.* at 445. Because the plaintiffs have not come forward with any affirmative indication that the defendants were provoked, the court cannot conclude that, on this basis, the plaintiffs were deprived of an impartial hearing.

## II.

The plaintiffs charge that PERB members discussed the case against Council 82 with PERB attorneys Martin Barr, Jerome Thier, and Anthony Cagliostro while the case was pending. According to the plaintiffs, Barr and Thier were present at PERB meetings at which the case against Council 82 was discussed, and either Thier or Cagliostro prepared a list of strike penalties for Jerome Lefkowitz, Counsel to PERB and

the person responsible for drafting PERB decisions.

The fact that PERB attorneys may have been briefly present at PERB meetings during which, at some point, the case against Council 82 was a topic of discussion does not indicate that improper *ex parte* communications took place. According to Ann Pociluk, Secretary to PERB:

> 3. It was my practice when preparing Board minutes to note the presence of any PERB staff members who appear at any time during the course of the meeting. If a person's name appears on the minutes, it does not mean the person was present for the entire meeting. It is the usual practice for staff members to appear before the Board for a particular matter and then leave the meeting.

Pociluk Affidavit at ¶ 3. *See also* Newman Affidavit at ¶ 17; Lefkowitz Affidavit at ¶ 9.

■ A variety of different matters are discussed during PERB meetings, certainly some of which require the attendance of Barr and Thier, as well as other PERB attorneys. Outside of the plaintiffs' conclusory allegation that the notation of the attorneys' names on the minutes of the meetings proves that improper communications occurred, there is nothing in the record to indicate that such communications may have actually occurred. Therefore, the plaintiffs have failed to rebut the defendants' assertion that no *ex parte* communications took place and have not met their burden of bringing to the court's attention "some affirmative indication that [their] version of relevant events is not fanciful." *Quinn*, 613 F.2d at 445.

■ Furthermore, the fact that Thier, or according to the defendants, Cagliostro, may have prepared a list of strike penalties for Board Counsel Lefkowitz does not amount to an improper communication between Thier or Cagliostro and the Board. Even if the list was incomplete, as alleged by the plaintiffs, it was only prepared as a statistical compilation of penalties imposed in other cases and in no way involved a communication between either attorney

and the Board concerning the merits of the case against Council 82.

■ Moreover, even if, in some fashion, the preparation of the list could be considered an improper *ex parte* communication, the court concludes that it did not taint the PERB decisionmaking process so as to make the decision unfair. *See PATCO v. Federal Labor Relations Authority*, 685 F.2d 547, 564–65 (D.C.Cir.1982). The list, if it was used at all, was used only as a frame of reference to provide the Board with some information about penalties it had imposed in past cases. It bore no relevance to the issue of whether Council 82 was liable for encouraging and condoning the strike. Newman Deposition at 56–60; Lefkowitz Deposition at 69–70. Additionally, the plaintiffs do not claim that they were deprived of the opportunity to present to the Board any information they wanted on the issue of penalties. Therefore, even if the preparation of the list was improper, vacation of PERB's decision and remand for new proceedings would serve no useful purpose. *PATCO*, 685 F.2d at 565.

### III.

■ The plaintiffs contend that a public statement made by PERB Chairman Newman during the course of the strike indicated that he had prejudged the case, or at least created the appearance that he had prejudged the case. The statement in question was made while Newman was speaking at a labor law seminar in Albany:

> It's nice to be the—this is the first time I think I can say with honesty and feeling —I'm glad to be here because not very far from here at the Ramada Inn is a situation which baffles me, frightens me and I will have to face again when I leave here, as I have for five days and nights. Theodore Kheel has said that collective bargaining is an irrational process and that applies of course to both the private sector and the public sector. If there's anything more irrational than the situation we currently have in the

Department of Corrections, I have never heard of it, and I have been involved in labor relations since antiquity, perhaps 1939.

*See* Norman Brand Affidavit; Plaintiffs' Exhibit B. The plaintiffs assert that Newman's statement espouses the view that Council 82 was striking despite the fact that the parties had reached an agreement on the new contract.

As this court stated in *Council 82 v. PERB:*

> Due process is not offended when a decisionmaker has simply "taken a position, even in public, on a policy issue related to the dispute." *Hortonville, supra,* 426 at U.S. at 493 [96 S.Ct. at 2314]. However, it is constitutionally unacceptable for a decisionmaker to announce in advance his position on adjudicative facts. *Cinderella Career and Finishing Schools, Inc. v. FTC,* 425 F.2d 583, 591 (D.C.Cir. 1970); *See also,* Davis, *Administrative Law Treatise,* § 19.4 at 382 (1980 ed.).

*Id.* at 19.

The plaintiffs base their argument that Newman had prejudged the merits of the Council 82 case on the affidavit of Ronald Dunn, who is now an attorney with the plaintiffs' law firm. Dunn, while a law school student in Albany, attended the seminar at which Newman made the statement in question. His affidavit provides in pertinent part:

> Specifically, I interpretted [sic] Mr. Newman to be saying that the situation to which he was referring was a situation in which the parties had reached agreement but the union was on strike. It was my understanding from this statement that Mr. Newman had made a determination that the union was, in fact, a striking union.

Dunn Affidavit at 2.

This affidavit, standing alone, is clearly insufficient to create a question of fact on this issue. "An affidavit of an opposing party's attorney which does not contain specific facts or is not based on first-hand knowledge is not entitled to any weight." *Wyler v. United States,* 725 F.2d 156, 160

(2d Cir.1983). The affidavit merely contains Dunn's own interpretation of Newman's statement, an interpretation that is not supported by the language itself.

■ The plaintiffs correctly argue that the question presented by this issue involves Newman's state of mind, and summary judgment is usually inappropriate where intent and state of mind are in issue. "The summary judgment rule would be rendered sterile, however, if the mere incantation of intent or state of mind would operate as a talisman to defeat an otherwise valid motion." *Meiri v. Dacon,* 759 F.2d 989, 998 (2d Cir.1985). Accordingly, construing all inferences in favor of the plaintiffs, as the court is required to do, the court cannot hold that Newman's statement in any way indicates that he had concluded that the parties had reached an agreement or that he had prejudged the merits of the case.

### IV.

■ The plaintiffs' first claim for relief states, "Upon information and belief, the manner in which PERB applied New York Civil Service Law Section 210 to Council 82 constitutes a deprivation of property without due process of law." Amended Complaint at ¶ 107. The court must therefore decide whether the availability of an Article 78 proceeding in New York State court would have provided the plaintiffs the due process of which they claim they were deprived.

There is no question that the plaintiffs could have obtained review of the PERB decision in an Article 78 proceeding. N.Y. Civ.Serv.Law § 213(a) provides that orders of the Board shall be:

> (i) reviewable under article seventy-eight of the civil practice law and rules upon petition filed by an aggrieved party within thirty days after service by registered or certified mail of a copy of such order upon such party, and (ii) enforceable in a special proceeding, upon petition of such board, by the supreme court.

Additionally, § 213(d) provides that:

> (d) In a proceeding to enforce or review an order of the board, the court shall

have power to grant such temporary relief or restraining order as it deems just and proper, and to make and enter a judgment or decree enforcing, modifying and enforcing as so modified, or setting aside in whole or in part the order of the board.

Therefore, not only was judicial review available to the plaintiffs, the state court could have granted them equitable relief pending a determination on the merits. Of course, the parties, as they have done in the instant action, could have stipulated to stay the suspension of dues check-off privileges until a final decision was reached. In either case, the plaintiffs would have been afforded their day in court before being deprived of any property right.

■ Moreover, even a post-deprivation hearing would have satisfied due process requirements under the circumstances of the case *sub judice*. "The fundamental requirement of due process is the opportunity to be heard and it is an 'opportunity which must be granted at a meaningful time and in a meaningful manner.'" *Parratt v. Taylor*, 451 U.S. 527, 540, 101 S.Ct. 1908, 1915, 68 L.Ed.2d 420 (1981) citing *Armstrong v. Manzo*, 380 U.S. 545, 552, 85 S.Ct. 1187, 1191, 14 L.Ed.2d 62 (1965). When a deprivation occurs as a result of a random and unauthorized act by a state actor, but not as a result of a state procedure, no pre-deprivation hearing is required. *Parratt*, 451 U.S. at 541, 101 S.Ct. at 1916. However, *Parratt* did not establish "that when a deprivation is the result of an established state procedure, a prior hearing is required." *Oberlander v. Perales*, 740 F.2d 116, 122 (2d Cir.1984).

Upon initial examination, *Oberlander* appears to sidestep the Supreme Court's decision in *Logan v. Zimmerman Brush Co.*, 455 U.S. 422, 102 S.Ct. 1148, 71 L.Ed.2d 265 (1982), which held that "postdeprivation remedies do not satisfy due process where a deprivation of property is caused by conduct pursuant to established state procedure, rather than random and unauthorized action." *Hudson v. Palmer*, 468 U.S. 517, 104 S.Ct. 3194, 3203, 82 L.Ed.2d 393 (1984)

(footnote omitted). A careful reading of *Oberlander* and *Logan* reveals, though, that each court has applied a different meaning to the concept of "deprivation of property caused by conduct pursuant to established state procedure." *See Oberlander*, 740 F.2d at 121–22; *Logan*, 455 U.S. at 435–36, 102 S.Ct. at 1157–58.

In *Logan*, an employee who had been discharged from his job due to the fact that he was handicapped brought a charge of unlawful conduct against his former employer before the Illinois Fair Employment Practices Commission. Pursuant to statute, the Commission had 120 days from the date of the filing of the complaint within which to hold a factfinding conference. The complainant's conference was inadvertently scheduled for a date five days after the expiration of the 120–day period. On the day that the conference was to be held, the employer moved to dismiss the charge against it because of the expiration of the statutory time period. Although that motion was denied by the Commission, the case eventually reached the Illinois Supreme Court, which held that the failure to timely hold the conference, though no fault of the complainant's, deprived the Commission of jurisdiction to hear the case.

In upholding the complainant's due process claim, the U.S. Supreme Court made clear that it was the "established state procedure," not the Commission's error, that was being addressed and that destroyed "[the complainant's] entitlement without according him proper procedural safeguards." *Id.* at 436, 102 S.Ct. at 1158.

In *Oberlander*, it was not an established state procedure that was being challenged by the plaintiff. In that case, the plaintiff, a nursing home, alleged that an agency of the New York State Department of Health failed to comply with state regulations when it reduced the nursing home's daily Medicaid patient reimbursement rate. There was no contention that any alleged unlawful action by the agency was caused by adherence to an unlawful statute or regulation. The conduct in question was contested because it was alleged to be in

violation of, rather than in accordance with, a state regulation.

The plaintiffs in the instant case are not challenging the statute pursuant to which PERB operates. Questions regarding provocation, *ex parte* communications, and prejudgment of cases are not directed toward a statute or regulation itself. They are directed toward individual conduct of PERB members who take their authority from a lawful statute. This case, like *Oberlander*, does not involve an alleged deprivation of property caused by conduct pursuant to established state procedure in the sense meant by the *Logan* court. Rather, it involves an alleged deprivation of property caused by allegedly unlawful conduct of persons acting pursuant to a lawful established state procedure. Accordingly, with *Oberlander* in mind, the court does not read *Logan* to hold that post-deprivation hearings are never constitutionally adequate in cases such as the instant one.[2]

Several cases have held that a post-deprivation Article 78 proceeding does provide an aggrieved party with sufficient due process. *Signet Construction v. Borg*, 775 F.2d 486 (2d Cir. 1985); *Eastway Construction Corp. v. City of New York*, 762 F.2d 243 (2d Cir.1985); *Oberlander*, 740 F.2d at 116; *Giglio v. Dunn*, 732 F.2d 1133 (2d Cir.1984). Further, an Article 78 proceeding has been used to challenge a PERB penalty suspending a union's dues checkoff privileges. *Egan v. Newman*, 92 A.D.2d 1007, 461 N.Y.S. 464 (3d Dep't 1983); *Dutchess Cty. Emp. Unit, Dutchess Cty. v. Helsby*, 62 A.D.2d 1089, 403 N.Y.S. 823 (3d Dep't 1978).

■ In determining whether a post-deprivation Article 78 proceeding would have satisfied due process requirements under the facts of the case *sub judice*, the court must examine: (1) the importance of the private interest affected; (2) the risk of erroneous deprivation under existing state procedures; and (3) the government interest involved. *Logan*, 455 U.S. at 434, 102 S.Ct. at 1157; *Mathews v. Eldridge*, 424 U.S. 319, 334–35, 96 S.Ct. 893, 902–03, 47 L.Ed.2d 18 (1976).

First, the private interest involved here, the right to have union dues deducted directly from paychecks, is not as important, for instance, as a person's right to receive disability payments or an indigent's right to receive public assistance. *See Signet*, 775 F.2d 486 at 491. While Council 82 may suffer some inconvenience and will not be able to collect its dues in as orderly a fashion, union members will still be able to make dues payments on their own, and not one member will suffer pecuniary loss.

Second, the penalty was imposed after a hearing before a PERB Hearing Officer, as well as a hearing before the Board itself, with each party represented by counsel. The risk of erroneous deprivation after a multi-level administrative procedure, such as that used in the instant case, would not be great.

Third, orders of PERB are to be deemed final. N.Y.Civ.Serv.Law § 213(a). However, if there was an automatic right of judicial review before every PERB order became enforceable, orders of PERB would not be final, and PERB's role would be reduced to little more than issuing advisory opinions to the courts. This could hardly be the result that the legislature had in mind in creating an agency with expertise in civil service matters. Further, the State would incur substantial additional expense in providing an automatic pre-deprivation judicial proceeding to a party that has already been heard by a hearing officer, as well as by the Board itself. The court is therefore convinced that the State's interest in a post-deprivation proceeding outweighs the union's interest in a pre-deprivation proceeding.

---

2. The court also does not read the Supreme Court's recent decision in *Cleveland Board of Education v. Loudermill*, — U.S. —, 105 S.Ct. 1487, 84 L.Ed.2d 494 (1985) to hold that post-deprivation hearings are not constitutionally adequate in cases such as the instant one. While the circumstances in *Loudermill* differ from those in *Logan*, *Loudermill*, like *Logan*, involved a direct challenge to a statutory procedure, not to allegedly unlawful conduct of persons acting pursuant to a lawful statute or regulation.

The plaintiffs assert that they would have had no right to discovery in an Article 78 proceeding against the State. N.Y.Civ. Prac.Law § 3102(f) (McKinney 1970) provides:

> (f) Action to which state is party. In an action in which the state is properly a party, whether as plaintiff, defendant or otherwise, disclosure by the state shall be available as if the state were a private person, except that it may be obtained only by order of the court in which the action is pending and except further that it may not include interrogatories or requests for admissions.

As stated in the Practice Commentary of Professor Siegel that follows the statute, "The unavailability of the admission and interrogatory devices is of small moment... When juxtaposed with the deposition and discovery, *the most important disclosure devices and now fully available against the state*, they are relatively unimportant." (emphasis added). The court finds no merit in the plaintiffs' assertion.

Accordingly, the court concludes that a post-deprivation Article 78 proceeding would have provided the plaintiffs all of the process that they were due in order to challenge PERB's decision, as well as to allege deprivations based on conduct of PERB members in reaching that decision.

For the reasons adduced in this opinion, the defendants' motion for summary judgment is GRANTED.

IT IS SO ORDERED.