**MILDRED ELLEY BUSINESS SCHOOL, INC., Plaintiff,**

v.

**Richard W. RILEY, Secretary of the United States Department of Education, Defendant.**

**No. 96–CV–1968 (FJS).**

United States District Court, N.D. New York.

Aug. 22, 1997.

**436**

Hinman & Straub, Albany, NY, for Plaintiff; Eileen Considine, of counsel.

Ritzert & Leyton, P.C., Fairfax, VA, for Plaintiff; Peter S. Leyton, of counsel.

Thomas J. Maroney, U.S. Atty., Northern District of New York, Albany, NY, for Defendant; Thomas Spina, Jr., Asst. U.S. Atty., of counsel.

United States Department Of Education, Office of the General Counsel, Washington, DC, for Defendant; Pamela Gault, of counsel.

## MEMORANDUM-DECISION AND ORDER

SCULLIN, District Judge.

### Introduction

This is an action seeking judicial review of an administrative agency decision under the Higher Education Act ("HEA"), 20 U.S.C. § 1001 et seq., the Administrative Procedure Act ("APA"), 5 U.S.C. § 500 et seq., and the Due Process Clause of the Fifth Amendment to the United States Constitution. The Plaintiff is a private post-secondary educational institution with campuses in Albany, New York, and Pittsfield, Massachusetts. The Defendant is the Secretary of the United States Department of Education, and is being sued in his official capacity.

This action arises out of the Defendant's decision to terminate Plaintiff's eligibility to participate in the Federal Family Education Loan ("FFEL") program established by the HEA. Plaintiff maintains that the Defendant has acted arbitrarily, capriciously, and contrary to law with respect to two administrative appeals filed by the Plaintiff. Plaintiff also contends that the Secretary failed to explain adequately the basis of its ruling which constitutes a violation of the Due Process Clause. Plaintiff seeks declaratory relief proclaiming the Defendant's rulings null and void. Presently before the Court are cross-motions for summary judgment.

### Factual Background

The material facts of this case are largely undisputed. Prior to Plaintiff's termination of eligibility, students attending the Mildred Elley Business School received a substantial amount of financial assistance under the FFEL program. Under that program, students at eligible institutions borrow money for tuition and expenses from participating lenders, such as commercial banks. These loans are insured, in the first instance, by guarantee agencies, such as the New York State Higher Education Services Corporation ("NYSHESC"). The loans are reinsured by the Department of Education. See 20 U.S.C. § 1078.

In order to control the cost of these programs, the Secretary has a duty, pursuant to 20 U.S.C. § 1080(m)(1)(A), to calculate, as accurately as possible, the number of current and former students at each participating institution who after entering repayment on FFEL loans in a fiscal year ("FY"), then default on those loans before the end of the following fiscal year. This is known as an institution's Cohort Default Rate ("CDR"). If an institution's CDR exceeds 25% for three consecutive fiscal years, the HEA mandates that the Secretary terminate that school's eligibility to participate in the FFEL program, absent exceptional circumstances. See 20 U.S.C. § 1085(a)(2)(A), (B).

In 1996, the Secretary notified the Plaintiff that it was no longer eligible to participate in the FFEL program because Plaintiff's CDRs for fiscal years 1991, 1992, and 1993, all exceeded 25%. In response, Plaintiff filed two administrative appeals regarding its FY

1993 CDR: (1) a loan servicing and collection appeal, and (2) an erroneous data appeal. In these appeals, the Plaintiff attempted to demonstrate that certain loans had been improperly included in Plaintiff's FY 1993 CDR. While the Plaintiff did prevail on some of its claims, the Plaintiff's FY 1993 CDR still remained above 25% after recalculation. Plaintiff now brings this action challenging the Secretary's decisions and explanation of his decisions.

## Discussion

Under Rule 56(c), summary judgment is warranted if, when viewing the evidence in a light most favorable to the non-movant, the court determines that there is no genuine issue of material fact and the movant is entitled to judgment as a matter of law. *See* Fed.R.Civ.P. 56(c); *Eastman Kodak Co. v. Image Technical Servs., Inc.*, 504 U.S. 451, 457, 112 S.Ct. 2072, 2077, 119 L.Ed.2d 265 (1992); *Commander Oil v. Advance Food Serv. Equip.*, 991 F.2d 49, 51 (2d Cir.1993). Where, as here, the Court is faced with cross-motions for summary judgment, "a district court is not required to grant judgment as a matter of law for one side or the other. 'Rather the court must evaluate each party's motion on its own merits, taking care in each instance to draw all reasonable inferences against the party whose motion is under consideration.'" *Heublein, Inc. v. United States*, 996 F.2d 1455, 1461 (2d Cir.1993) (quoting *Schwabenbauer v. Board of Educ.*, 667 F.2d 305 (2d Cir.1981)).

In this motion for summary judgment, the Plaintiff asserts essentially three arguments. First, Plaintiff claims that the Defendant's ruling on Plaintiff's loan servicing appeal must be vacated because the Defendant improperly failed to remove six loans from Plaintiff's FY 1993 CDR. Second, Plaintiff claims that the Defendant's decision was arbitrary and capricious in that it failed to exclude two other loans that were improperly counted in Plaintiff's FY 1993 CDR due to erroneous data was arbitrary and capricious. Finally, Plaintiff argues that the Defendant failed to explain adequately the basis for his rulings in violation of the APA and Due Process Clause. The Court will address each of these arguments in turn.

## I. Loan Servicing and Collection Appeal

As stated, Plaintiff claims that the Defendant should have excluded six loans from Plaintiff's FY 1993 CDR due to errors in loan servicing and collection. Specifically, Plaintiff claims that the administrative record does not contain any evidence indicating that the issuing lenders performed the requisite "skip tracing" in order to locate missing borrowers. The Defendant contends that the entries "skip determined" and "skip start" in the computer records of the guarantee agency (NYSHESC) that paid claims to these lenders are sufficient to support the Defendant's determination that those loans did not default due to improper servicing or collection efforts under 20 U.S.C. § 1085(m)(1)(B) and 34 C.F.R. § 668.17(h)(3)(viii)(E). Thus, the Secretary argues that those six loans were properly counted in Plaintiff's FY 1993 CDR. The Secretary further argues that the HEA is ambiguous on this point, and that the Secretary's interpretation of that statute, vis-a-vis 34 C.F.R. § 668.17(h)(3)(viii) and application of that regulation to Plaintiff's loan servicing appeal are reasonably entitled to deference,

In this case, the HEA provision involved, 20 U.S.C. § 1085(m)(1)(B), provides:

In determining the number of students who default before the end of [the relevant] fiscal year, the Secretary shall include only loans for which the Secretary or a guarantee has paid claims for insurance, and, in considering appeals with respect to cohort default rates pursuant to subsection (a)(3) of this section, exclude any loans which, *due to improper servicing or collection*, would, as demonstrated by the evidence submitted in support of the institution's appeal to the Secretary, result in an inaccurate or incomplete calculation of such cohort default rate.

(emphasis added). In an attempt to determine which loans should be excluded from an institution's CDR because the default was "due to" improper servicing or collection, the Secretary promulgated 34 C.F.R. § 668.17(h)(3)(viii), which states, in relevant part:

For purposes of this paragraph, a default is considered to have been due to improper servicing or collection only if the borrower did not make a payment on the loan and the institution proves that the lender failed to perform one or more of the following activities ... (E) [i]f required, the lender did not submit a certification (or other evidence) that skip tracing was performed.

■ As with all questions of statutory interpretation, if Congress has spoken to the precise question at issue, the Court must give effect to the unambiguously expressed intent of Congress. *Skandalis v. Rowe*, 14 F.3d 173, 179 (2d Cir.1994) (citing *Chevron, U.S.A., Inc. v. Nat'l Resources Defense Council, Inc.*, 467 U.S. 837, 104 S.Ct. 2778, 81 L.Ed.2d 694 (1984)). If, on the other hand, the statute is silent or ambiguous, the court must "defer to the agency's resolution of the matter if it is based on a permissible construction of the statute and is sufficiently reasonable." *Id.* (internal quotations and citations omitted). Deference to an agency's interpretation of a statute is even more appropriate where, as here, "the dispute involves a small corner of a labyrinthine statute." *Id.* (citations omitted).

■ As an initial matter, the Court agrees with the agency determination that the relevant statutory provisions are ambiguous. The statute is unclear how the Department is to determine when a loan is improperly included in an institution's CDR "due to" improper servicing or collection. Furthermore, the statute requires the Secretary to determine what would constitute "evidence" to support the institution's claim of improper servicing or collection. *See* 20 U.S.C. § 1085(m)(1)(B).

■ In light of the ambiguous statutory directive and complex regulatory scheme involved in this case, the Court finds that the Secretary's regulation, 34 C.F.R. § 668.17(h)(3)(viii)(E), is reasonable and entitled to deference. However, while entitled to such deference, this Court must nonetheless examine the administrative record to ascertain whether the regulation was arbitrarily or capriciously applied by the Secretary. *See* 5 U.S.C. § 706(2)(A); *Camp v. Pitts*, 411 U.S.

138, 142, 93 S.Ct. 1241, 1244, 36 L.Ed.2d 106 (1973).

■ While a reviewing court may not substitute its own judgment for that of the agency, the court must be satisfied that the agency examined all relevant factors, offered an explanation that showed a "rational connection between the facts found and the choice made," and did not make a "clear error of judgment." *Motor Vehicle Mfr. Ass'n, v. State Farm Auto. Ins. Co.*, 463 U.S. 29, 103 S.Ct. 2856, 77 L.Ed.2d 443, (1983) (quoting *Burlington Truck Lines v. United States*, 371 U.S. 156, 168, 83 S.Ct. 239, 245–46, 9 L.Ed.2d 207 (1962)). "If the record before the agency does not support the agency action, if the agency has not considered all relevant factors, or if the reviewing court simply cannot evaluate the challenged agency action on the basis of the record before it, the proper course, except in rare circumstances, is to remand to the agency for additional investigation or explanation." *Florida Power & Light Co. v. Lorion*, 470 U.S. 729, 744, 105 S.Ct. 1598, 1607, 84 L.Ed.2d 643 (1985).

■ In this case, the only evidence contained in the administrative record concerning the performance of skip tracing was the entries "skip determined" and "skip start" by the NYSHESC. Furthermore, in each case, the date entered for "skip start" was either the same day or one day later than the date entered for "skip determined." Based on this evidence, the Court finds it was arbitrary and capricious for the Secretary to determine that the requisite skip tracing had been performed. The Secretary's own regulation clearly states that a default will be deemed to have resulted from improper loan servicing or collection when the borrower has failed to make a loan payment and the "lender did not submit a certification (or other evidence) that skip tracing was *performed*." 34 C.F.R. § 668.17(h)(3)(viii)(E). Giving appropriate deference to the Secretary's interpretation of the regulation, not every possible step that constitutes skip tracing need be performed. However, nowhere in the record is it reflected that any steps were taken that could reasonably be viewed as the performance of

skip tracing. Therefore, the Secretary's decision must be vacated and the matter remanded to the agency for further consideration of the Plaintiff's FY 1993 CDR loan servicing and collection appeal. The Plaintiff is to be restored to eligibility to participate in the FFEL program pursuant to 20 U.S.C. § 1085(a)(2)(A) until the Secretary makes his final determination.

## II. Erroneous Data Appeal

As stated, the Plaintiff also argues that the Defendant improperly declined to exclude two additional loans from its FY 1993 CDR that were entered based on erroneous data. First, Plaintiff claims that "the Clifford Alexander loans" should have been excluded from Plaintiff's FY 1993 CDR because the lender improperly began collection efforts two months prior to the expiration of the applicable grace period on the loans. Next, Plaintiff claims that "the Carol Schreifiels loans" should be excluded from Plaintiff's FY 1993 CDR because her loans should have been, and apparently have been, counted in Plaintiff's FY 1994 CDR.

■ With respect to the "Alexander loans," the Plaintiff's claim depends entirely upon Plaintiff's unsupported allegation that the computer was wrong and that Alexander actually ceased to be enrolled at Mildred Elley two months later than the computer records indicated. This argument is without merit. Even assuming Plaintiff's allegation to be true and supported by evidence, the loan would still have been counted in Plaintiff's FY 1993 CDR because the loan would have entered repayment in fiscal year 1993. Furthermore, to the extent Plaintiff argues that the default was caused by improper servicing or collection, such argument also lacks merit. Initiating collection efforts prior to the expiration of the applicable grace period is *not* one of the improper loan servicing or collection activities listed in 34 C.F.R. § 668.17(h)(3)(viii). Therefore, after carefully considering the matter, the Court finds that the Defendant did not act arbitrarily or capriciously with respect to the "Alexander loans."

With respect to the "Schreifiels loans," Plaintiff argues that the loans should not have been included in the FY 1993 CDR because these loans did not enter repayment until 1994 due to a particular policy known as "linkage." Under this policy, two types of loans, Stafford and SLS loans, are deemed to enter repayment on the same date. Because the Stafford loan has a six month grace period, the Department deems the SLS to have also entered repayment after the six month grace period. Thus, if a student with an SLS and Stafford loan graduated in May of 1993, the repayment entered date for both loans would have been December of 1993, and because the fiscal year ends on September 30th, both the SLS and Stafford loans would actually enter repayment in FY 1994.

■ However, in this case the record reveals that the Secretary determined that this borrower had either paid off or began repaying her Stafford loan prior to September 30, 1993 (or before the grace period had run). Thus, under the applicable "linkage policy" the SLS loan would be linked and enter repayment in FY 1993 as well, and the loans should have been counted in Plaintiff's FY 1993 CDR. Therefore, the Court finds the Secretary's decision was not arbitrary or capricious with respect to the "Schreifiels loans."

## III. Due Process

Finally, the Plaintiff argues that the Secretary's explanations for his rulings were inadequate and violated the Plaintiff's due process rights.

■ Plaintiff's eligibility to participate in the FFEL program is a property interest protected by the Constitution. *See Continental Training Serv., Inc. v. Cavazos,* 893 F.2d 877, 893 (7th Cir.1990). What is fundamentally fair in terms of notice and a hearing necessarily depends on the circumstances of each case. *Signet Constr. Corp. v. Borg,* 775 F.2d 486, 490 (2d Cir.1985). Rigid, inflexible formulas will not fit all situations. *Id.* However, as a general matter, where a nonjudicial decision maker is involved, due process requires that he or she " 'state the reasons for his determination and indicate the evidence he relied on.' " *Hameetman v. City of Chicago,* 776 F.2d 636, 645 (7th Cir.1985)

**440**

(quoting *Goldberg v. Kelly,* 397 U.S. 254, 271, 90 S.Ct. 1011, 1022, 25 L.Ed.2d 287 (1970)). Of course, this "duty to explain presupposes that the explanation is not obvious." *Id.*

In this case, the Plaintiff claims that the Secretary failed to articulate adequately the basis for his rulings regarding Plaintiff's loan servicing and erroneous data appeals. In the Department's letter informing Plaintiff of its ruling on Plaintiff's loan servicing appeal, the Department indicated that 102 loans were submitted for review and 100 were found to have been properly serviced. Attached to the letter were (1) an explanation of relevant amendments to the HEA, (2) the applicable regulations, and (3) a synopsis of the general interpretative guidance set forth by the Secretary in the Federal Register. The Department's letter regarding Plaintiff's erroneous data appeal simply states that the Department had determined that two loans were improperly included in Plaintiff's FY 1993 CDR, and that Plaintiff's CDR was modified accordingly.

While these letters do not specifically address the eight loans at issue in this action, to require such a detailed explanation from the Secretary in the hundreds of cohort default rate appeals filed each year would place an undue burden on the Department. The administrative record for these two appeals alone contains reams of information for the Secretary's review. Although a brief summary of the Department's conclusions regarding the Plaintiff's specific claims would certainly provide schools in the Plaintiff's circumstances with a better understanding of the basis of the Defendant's decisions, the Court does not find that the Due Process clause requires such a summary, and Plaintiff's due process claims must be dismissed.

### Conclusion

Therefore, after carefully considering the papers submitted, the arguments of counsel, and the entire record in this case, it is hereby

ORDERED that the Plaintiff's motion for summary judgment in this matter is GRANTED, and that the Defendant's cross-motion for summary judgment is DENIED, and it is further

ORDERED that the Secretary of the Department of Education's decision with respect to the loan servicing and collection appeal is vacated and the matter remanded to the Agency for further consideration of all relevant evidence to the proper calculation of the Plaintiff's FY 1993 CDR, and it is further

ORDERED that the Plaintiff's eligibility to participate in the federal Family Education Loan program be restored pending the Agency's final determination.

**IT IS SO ORDERED.**