**EAST COAST NOVELTY COMPANY, INC., Plaintiff,**

v.

**The CITY OF NEW YORK, the Police Department of the City of New York, Carl W. Wendt, Property Clerk of the Police Department of the City of New York, Police Officer Sandra Vasquez, Badge No. 24707, Defendants.**

No. 90 Civ. 2108 (RWS).

United States District Court, S.D. New York.

Jan. 2, 1992.

OPINION

SWEET, District Judge.

Defendants City of New York (the "City"), Police Department of the City of New York ("Police Department"), Property Clerk's Office of the Police Department of the City of New York ("Property Clerk"), Carl W. Wendt ("Wendt"), and Sandra Vazquez ("Office Vazquez", collectively the "Defendants") have moved to dismiss the complaint plaintiff East Coast Novelty Company, Inc. ("East Coast") has brought against them. Defendants all move for summary judgment on grounds that East Coast was provided with more than adequate due process and that the claims are collaterally estopped. The Police Department and Property Clerk separately move to dismiss on the ground that they are not suable entities, and thus not proper parties to the action. The City also moves for summary judgment on grounds that East Coast cannot establish municipal liability against it under 42 U.S.C. § 1983 and that punitive damages cannot be awarded against it in such an action. Finally, Office Vazquez moves for dismissal on the ground that she is entitled to qualified immunity.

For the reasons set forth below, the Defendants' motions are granted in part and denied in part. To the extent that East Coast's claim against the Defendants alleges a procedural due process violation, it is dismissed. The claims against the Police Department and the Property Clerk are dismissed since they are not proper parties to this action. Any claim for punitive damages under § 1983 against the City is dismissed. Officer Vazquez is entitled to qualified immunity, so that all claims against her are dismissed. The Defendants' other motions are denied.

East Coast has filed a cross-motion seeking to amend its complaint to add six new defendants and to state its § 1983 claim with more particularity. East Coast's cross-motion is granted.

*The Parties*

East Coast is a New Jersey corporation authorized to do business in the State of New York. Its principal office is in the

Kahn & Sternberg, Rockville Centre, N.Y. (Alan Kahn, Elaine H. Sternberg, Donna Hill, of counsel), for plaintiff.

Victor A. Kovner, Corp. Counsel of City of N.Y., New York City (Lawrence Wolff, John P. Woods, Asst. Corp. Counsel, of counsel), for defendants.

City of Newburgh, New York, and its primary business is importing Class "C" fireworks.

The City is a domestic municipal corporation with full governmental authority, existing under the laws of the State of New York.

The Police Department is a subdivision of the City engaged in law enforcement. The Property Clerk is a division of the Police Department.

Officer Vazquez is a law enforcement officer employed by the Police Department.

Wendt was alleged to have been the Property Clerk during the relevant time period. However, he did not hold this position at that time and has never been served. The action against Wendt has therefore been discontinued. Defendant's Memorandum of Law 2 n. 1.

*The Facts*

The events in question were set off by two successive Fourth of July fireworks displays in 1987 and 1988 at the Bergen Hunt and Fish Club. The Club, in Queens, is, as any avid reader of New York's tabloids knows, allegedly a headquarters for one of the region's organized crime families.

According to East Coast, the Police Department was embarrassed by the unscheduled light shows. This led Chief Robert J. Johnston, Jr. to issue a memorandum instructing the Chief of the Department's Organized Crime Control Bureau to "commence an investigation into the importation, distribution and sales of illegal fireworks in this city ... in an effort to target major players and attack their focal points of distribution." Memorandum from Robert J. Johnston, Jr., Chief of Department, to Raymond Jones, Chief of Organized Crime Control (July 5, 1988). Soon thereafter, the Police Department initiated "Operation Skyrocket."

At some point, East Coast was targeted by Operation Skyrocket. East Coast has been in existence since about 1978 and has imported Class "C" fireworks since its inception. Enrique Ponce De Leon ("De Leon") is allegedly the sole shareholder of

East Coast. His brother-in-law, Louis Cinquegrana ("Louis"), was the company's day-to-day manager. De Leon attended to the administrative aspects of the business.

Throughout its existence, East Coast has engaged in volume wholesale transactions of Class "C" fireworks. Most of its business was conducted by word of mouth referral on an appointment only basis. It appears that East Coast was a properly licensed importer of such fireworks and that it complied with all of the requirements of the United States Customs Department, United States Consumer Product Safety Commission, United States Department of Transportation, and the City of Newburgh from 1983 to 1989.

East Coast's facilities were located initially in New Jersey. In 1983, it outgrew those facilities and secured a lease on six acres of land in Newburgh, New York (the "Premises"). Three former military bunkers, ideally suited for storing fireworks, are located on the Premises. East Coast purchased the Premises in 1986.

A buy and bust operation eventually was planned against East Coast. Detective Mitchell Kolpan of the Police Department (the "Agent") assumed a fictitious name and sought out Louis's father in an attempt to contact Louis. A meeting took place between the two at a social club on Mott Street in Manhattan. At the meeting, the Agent gave Louis's father his telephone number, which in turn was eventually passed on to Louis.

Louis soon contacted the Agent and arranged a meeting in Fort Lee, New Jersey. The meeting took place on April 21, 1989. The two agreed that the Agent would purchase Class "C" fireworks specified on a list provided by the Agent for $10,000. The Agent maintains, but East Coast denies, that he told Louis he wanted to transport the fireworks to a location within New York City. Louis allegedly told the Agent that he could not lawfully sell fireworks for use in New York and that the Agent would need to produce an out-of-state driver's license at the time of sale.

The transaction was consummated on April 25, 1989. On that day, the Agent and

another undercover officer went to the Premises and selected and paid $10,000 for various fireworks. Items were taken from each of the three bunkers and a release signed by the Agent stating that the fireworks were purchased for sale or use outside of New York State. Again, the Agent contends that he told Louis that the fireworks were going to be sold in New York City, while East Coast denies such a representation ever was made.

A search warrant for the Premises was sworn out that day in New York City Criminal Court. It authorized the seizure of "fireworks, which property is evidence of the crime Unlawfully Dealing with Fireworks." The affidavit submitted in support of the warrant was based upon multiple hearsay. The affidavit did state that a sale of $10,000 worth of firecrackers had been arranged, but failed to state that this occurred in New Jersey and was for the sale of Class "C" fireworks.

Waiting in the woods outside the Premises while the Agent conducted his business with Louis were 50–75 New York City Police Officers under the command of Inspector Frank Biehler. Upon the Agent's signal, sometime after noon, the officers entered the Premises. Louis was arrested by Officer Vazquez and advised of his rights. The warrant arrived between 2:00 and 3:00 p.m. Around 6:00 p.m., an Assistant District Attorney and a Police Department Attorney arrived at the Premises. They advised Inspector Biehler that the entire inventory should be seized and transported to the Police Department's Rodman's Neck facility. The officers present then proceeded to do so, loading 9,839 cases of fireworks, said to be valued at over $5,000,000 by the Police Department, into 20 trucks. The inventory was taken to Rodman's Neck and stored there until it was destroyed over the course of several months.

*Prior Proceedings*

After the fireworks were seized, a destruction hearing was held in New York City Criminal Court on April 27, May 1 and May 2, 1989, pursuant to N.Y. Penal Law §§ 270.00, 405.05. At the hearing, evidence was presented by the State to show that the fireworks were possessed illegally and that they presented a hazardous condition at Rodman's Neck. The Agent did not testify at this hearing. Instead, most of the State's evidence was double hearsay. Both sides presented expert witnesses. De Leon testified for the defendant, and Louis's attorney advised the court that he represented the interests of both Louis and East Coast, although East Coast was not officially a party to that proceeding.

The criminal court judge found by clear and convincing evidence that East Coast's entire inventory was possessed illegally. She therefore ordered that it be destroyed, but stayed the order to allow an appeal to be perfected. The legality of the seizure specifically was not addressed. *See* Destruction Hearing Transcript 80 (May 2, 1989).

On May 4, 1989, Louis and East Coast brought an Order to Show Cause in New York Supreme Court seeking an Order of Prohibition pursuant to Article 78. It was denied on May 9, and a Notice of Appeal from this denial was immediately filed and a stay of destruction sought. On May 23, the First Department denied the stay. That order was never appealed, nor was the Notice of Appeal from the Supreme Court's denial ever perfected.

In the subsequent criminal proceedings against him, Louis challenged the validity of the search warrant in a pre-trial motion on two grounds. First, he argued that a criminal court judge in New York City could not issue a search warrant to be effectuated in Newburgh. Second, Louis argued that insufficient facts were supplied to the issuing judge to support a finding of probable cause. Both arguments were rejected.

Louis was tried before a state criminal court judge on two misdemeanor counts of unlawfully dealing with fireworks. After a bench trial, the judge found Louis innocent on both counts on the ground that the court lacked "geographical jurisdiction." *People v. Cinquegrana,* No. 9NO42472, Trial Transcript at 4 (N.Y.C.Crim.Ct. Sept. 8, 1989).

*Discussion*

In its complaint, East Coast alleges that the Defendants committed both state and federal torts by seizing the fireworks and destroying them. Particularly, the first count alleges that the Defendants deprived East Coast of its property without due process of law, in violation of § 1983. The second through sixth counts all allege state torts committed by some or all of the Defendants, including conversion, trespass, and intentionally wrongful conduct.

In addressing the Defendants' motions, the following familiar standards must be kept in mind. First, a court should dismiss a complaint for failure to state a claim under Rule 12(b)(6) of the Federal Rules of Civil Procedure only if it appears beyond doubt that the plaintiff can prove no set of facts supporting its claim that entitles it to relief. *See H.J. Inc. v. Northwestern Bell Tel. Co.*, 492 U.S. 229, 109 S.Ct. 2893, 2906, 106 L.Ed.2d 195 (1989); *Hishon v. King & Spalding*, 467 U.S. 69, 73, 104 S.Ct. 2229, 2223, 81 L.Ed.2d 59 (1984); *Dahlberg v. Becker*, 748 F.2d 85, 88 (2d Cir.1984), *cert. denied*, 470 U.S. 1084, 105 S.Ct. 1845, 85 L.Ed.2d 144 (1985). The complaint's allegations must be construed in the light most favorable to the plaintiff and the plaintiff's allegations accepted as true. *See Scheuer v. Rhodes*, 416 U.S. 232, 236, 94 S.Ct. 1683, 1686, 40 L.Ed.2d 90 (1974); *Dacey v. New York County Lawyers' Assoc.*, 423 F.2d 188, 191 (2d Cir.1969), *cert. denied*, 398 U.S. 929, 90 S.Ct. 1819, 26 L.Ed.2d 92 (1970).

Second, "[s]ummary judgment may be granted only when there is no genuine issue of material fact remaining for trial and the moving party is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c). 'As a general rule, all ambiguities and inferences to be drawn from the underlying facts should be resolved in favor of the party opposing the motion, and all doubts as to the existence of a genuine issue for trial should be resolved against the moving party.' However, where the nonmoving party bears the burden of proof at trial, Rule 56 permits the moving party to point to an absence of evidence to support an essential element of the nonmoving party's claim." *Bay v. Times Mirror Magazines, Inc.*, 936 F.2d 112, 116 (2d Cir.1991) (citations omitted). In sum, if in "[v]iewing the evidence produced in the light most favorable to the nonmovant, ... a rational trier could not find for the nonmovant, then there is no genuine issue of material fact and entry of summary judgment is appropriate." *Binder v. Long Island Lighting Co.*, 933 F.2d 187, 191 (2d Cir.1991); *see also Bay*, 936 F.2d at 116.

## I. SECTION 1983

In the first claim for relief, East Coast alleges that "[b]y virtue of the retention and destruction of the property which was illegally seized the plaintiff has been caused to suffer and sustain injury." Complaint ¶ 21. Fairly read, the claim alleges both a procedural due process violation and a substantive due process violation under 42 U.S.C. § 1983.[1] For the reasons set forth below, to the extent that the claim alleges a violation of procedural due process it is dismissed.

### A. *Preclusion*

Defendants argue that East Coast is precluded from bringing this action because it already had an adequate opportunity to contest the seizure and the destruction of the fireworks during the criminal proceedings against Louis. Specifically, they first rely on the judge's decision in the destruction hearing that the fireworks were possessed unlawfully and therefore should be destroyed. Second, they contend that East Coast was in privity with Louis in the other

---

1. Section 1983 states:
   Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress....
   42 U.S.C. § 1983.

criminal proceedings, and that the present issues were adequately litigated there.

■ In § 1983 actions, a prior state court judgment is given the same preclusive effect that state's courts would grant it. This includes both issues that were necessarily decided and claims that could have been brought but were not. *See Migra v. Warren City School District,* 465 U.S. 75, 84–85, 104 S.Ct. 892, 897–98, 79 L.Ed.2d 56 (1984); *Allen v. McCurry,* 449 U.S. 90, 101, 101 S.Ct. 411, 418, 66 L.Ed.2d 308 (1980). It is therefore necessary to turn to New York law to determine whether East Coast is barred by the previous actions. *Migra,* 465 U.S. at 85, 104 S.Ct. at 898; *Cameron v. Fogarty,* 806 F.2d 380, 384 (2d Cir.1986), *cert. denied,* 481 U.S. 1016, 107 S.Ct. 1894, 95 L.Ed.2d 501 (1987).

In New York, a party is precluded "from relitigating in a subsequent action or proceeding an issue clearly raised in a prior action or proceeding and decided against that party or those in privity." *Ryan v. New York Telephone Co.,* 62 N.Y.2d 494, 500, 478 N.Y.S.2d 823, 826, 467 N.E.2d 487, 490 (1984). This rule operates when "(1) 'the issue as to which preclusion is sought is identical with the issue decided in the prior proceeding' (2) 'the issue was necessarily decided in the prior proceeding,' and (3) 'the litigant who will be held precluded in the present proceeding had a full and fair opportunity to litigate the issue in the prior proceeding.'" *Cameron,* 806 F.2d at 385 (quoting *Capital Telephone Co. v. Pattersonville Telephone Co.,* 56 N.Y.2d 11, 17, 451 N.Y.S.2d 11, 13, 436 N.E.2d 461, 463 (1982)).

Defendants argue that East Coast had a full and fair opportunity to litigate all of the issues raised here in the destruction hearing. To do so, East Coast must have been in privity with Louis, that is "the connection between the [two] must be such that the interests of the nonparty can be said to have been represented in the prior proceeding." *Green v. Santa Fe Industries, Inc.,* 70 N.Y.2d 244, 253, 519 N.Y.S.2d 793, 796, 514 N.E.2d 105, 108 (1987).

■ At the destruction hearing, Louis's counsel advised the court that he represented both East Coast's and Louis's interests. The stakes were quite high at this stage of the proceedings for East Coast, even though East Coast was not explicitly a party. The evidence suggests that East Coast controlled the litigation during the hearing and the post-hearing appeals completely. It therefore had a full opportunity to litigate the issues presented at the destruction hearing. Under the unusual circumstances presented here, East Coast can be considered to have been in privity with Louis during the destruction hearing and the immediate challenges to the determination made there. *Cf. National Fuel Gas Distribution Corp. v. Public Service Commission,* 950 F.2d 829, 839 (2d Cir.1991).

Nevertheless, this does not bar East Coast's § 1983 claim. In New York, "[w]hat is controlling is the identity of the issue which has necessarily been decided in the prior action or proceeding." *Ryan,* 62 N.Y.2d at 500, 478 N.Y.S.2d at 826, 467 N.E.2d at 490. Under this rubric, the Second Circuit has narrowly limited the operation of issue preclusion in § 1983 actions.

For example, in *Owens v. Treder,* 873 F.2d 604 (2d Cir.1989), the plaintiff brought a § 1983 action alleging that racially motivated police brutality had coerced his confession to a murder and robbery. The plaintiff had been convicted in a New York State court upon a general jury verdict. In a pre-trial hearing, a criminal court judge had ruled that the confession had not been coerced. The Court of Appeals, relying on a New York statute that allows a person to relitigate a confession's voluntariness before the jury, held that the conviction by a general verdict did not bar the § 1983 action since whether the issue was necessarily decided by the jury could not be determined. *Id.* at 610.

Likewise in *Cameron,* the plaintiff brought a § 1983 action alleging that he had been arrested without probable cause. The plaintiff eventually was convicted in a New York state court. During those proceedings, the court ruled that evidence seized in connection to his arrest was ad-

missible, but never appeared to address whether the arrest itself was lawful. Because the issue was seemingly not decided during the criminal trial nor necessary to its ruling concerning the admissibility of the evidence, the Court of Appeals refused to bar his § 1983 lawsuit under principles of collateral estoppel. 806 F.2d at 385.

■ The present action is based partially upon allegations that the search warrant was executed unlawfully. At the destruction hearing, the judge stated explicitly that "[t]he issue is not before this court as to whether the fireworks were lawfully seized." Hearing Transcript 80 (May 2, 1989). This issue thus was not necessarily decided in the destruction hearing, and East Coast's § 1983 claim is not barred on this basis.

■ Moreover, that East Coast failed to pursue its Article 78 remedies does not preclude a subsequent action seeking damages for alleged civil rights violations. Article 78 is a special proceeding, limited in scope. In particular, damages are available only in certain instances, *see* N.Y.Civ. Prac.L. & R. 7806, and generally not for civil rights violations, *see Davidson v. Capuano*, 792 F.2d 275, 278–79 (2d Cir.1986). A § 1983 action for damages thus is not foreclosed merely because an Article 78 proceeding may have been available on the same underlying facts, *Petrella v. Siegel*, 843 F.2d 87, 90 (2d Cir.1988); *Alfaro Motors, Inc. v. Ward*, 814 F.2d 883, 887 (2d Cir.1987); *Davidson*, 792 F.2d at 280, and East Coast's claims are not fully barred by its failure to pursue its Article 78 remedies.

Defendants also argue that East Coast was in privity with Louis when Louis challenged the search warrant in a pretrial hearing and that that court's determination forecloses this action.

■ At the pretrial hearing, the criminal court only addressed whether there was sufficient probable cause to support the issuance of the search warrant. *See* Hearing Transcript 18–25 (June 19, 1990). For that determination to bar the present litigation, the issue presented there must have been material, essential to any decision rendered, and the point actually to be determined here. *Ryan*, 62 N.Y.2d at 500, 478 N.Y.S.2d at 826, 467 N.E.2d at 490. However, since the events surrounding the seizure were not addressed specifically in any of the prior proceedings, as opposed to the propriety of the warrant, East Coast is not precluded from raising those issues here. *Cameron*, 806 F.2d at 385; *Giannini v. City of New York*, 700 F.Supp. 202, 205–06 (S.D.N.Y.1988); *see also Haring v. Prosise*, 462 U.S. 306, 316–17, 103 S.Ct. 2368, 2374–75, 76 L.Ed.2d 595 (1983) (applying Virginia law); *Webb v. Ethridge*, 849 F.2d 546, 549 (11th Cir.1988).

■ Nor was there privity between East Coast and Louis at this stage. Each party's stake in the proceedings was vastly different by the time of Louis's criminal trial. By then, East Coast no longer had a property interest in the proceedings. No criminal charges were brought against East Coast; it therefore could not have been a party to Louis's criminal trial and the pretrial hearing. Louis also was no longer represented by East Coast's counsel. Any collateral bar that may operate against Louis as a result of these proceedings cannot be applied to East Coast. *See Parker v. Williams*, 862 F.2d 1471, 1474–45 (11th Cir.1989).

### B. *Procedural Due Process*

The Defendants argue that the State remedies available to East Coast after its inventory was seized were adequate, and that because East Coast failed to exhaust these remedies, it cannot maintain this § 1983 action.

■ The Due Process Clause is satisfied even though there has been a deprivation of property if the state provides a "suitable postdeprivation remedy." *Hudson v. Palmer*, 468 U.S. 517, 533, 104 S.Ct. 3194, 3203, 82 L.Ed.2d 393 (1984); *see also Zinermon v. Burch*, 494 U.S. 113, 110 S.Ct. 975, 108 L.Ed.2d 100 (1990); *Parratt v. Taylor*, 451 U.S. 527, 101 S.Ct. 1908, 68 L.Ed.2d 420 (1981), *overruled on other grounds by Daniels v. Williams*, 474 U.S. 327, 330–31, 106 S.Ct. 662, 664–65, 88 L.Ed.2d 662 (1986). An opportunity to be

heard at a meaningful time and in a meaningful manner need be provided, though the timing and the nature of this hearing depends upon the nature of the individual circumstances. *See Logan v. Zimmerman Brush Co.*, 455 U.S. 422, 433–34, 102 S.Ct. 1148, 1156–57, 71 L.Ed.2d 265 (1982); *Signet Construction Corp. v. Borg*, 775 F.2d 486, 490 (2d.Cir.1985). This is true whether those acting under the color of state law acted intentionally or negligently. *Hudson*, 468 U.S. at 533, 104 S.Ct. at 3203. Nevertheless, exhaustion of one's state remedies is not a prerequisite to a § 1983 action. *Signet Construction*, 775 F.2d at 490.

In *Alfaro Motors*, the Second Circuit affirmed the district court's dismissal of a § 1983 action. The plaintiffs there alleged that they had been deprived of their right in property, in particular tow truck medallions, by the Police Department's failure to issue the medallions to them. The plaintiffs characterized the department's actions as arbitrary and capricious and sought retribution. In its opinion, the Second Circuit noted in part that the availability of an Article 78 proceeding provided an adequate enough proceeding to protect any property interest of the plaintiffs in the medallions. The plaintiffs' procedural due process claim thus was dismissed partly because they had availed themselves of Article 78 initially, only to have abandoned that proceeding midstream. 814 F.2d at 888.

■ Here, the State provided at least two post-deprivation proceedings. First, the fireworks could not have been destroyed until after a destruction hearing was conducted pursuant to § 405.05 of the New York Penal Law.[2] Such a hearing was held. Granted, East Coast was not a name party to that action, but Louis was in fact represented by East Coast's attorney, the attorney advised the court that he represented both East Coast and Louis, and Louis did not object to this potential conflict of interest even though it was brought to his attention by the court. It appears that East Coast's attorney directed the proceedings at the destruction hearing and the subsequent appeals from that hearing fully. Therefore, in these unique circumstances, it can be said the destruction hearing alone provided East Coast with adequate procedural due process.

■ Second, as the owner of the fireworks, East Coast was entitled to initiate an Article 78 proceeding contesting the seizure of the fireworks. *See, e.g., Melmarkets, Inc. v. Dillon*, 80 A.D.2d 839, 436 N.Y.S.2d 780 (2d Dep't 1981). An Article 78 proceeding would have been the proper means of determining whether or not the determination at the destruction hearing was arbitrary and capricious. The availability of such a proceeding provided sufficient procedural due process to protect East Coast's property interest in the fireworks. That East Coast initially brought an Article 78 proceeding, but then failed to pursue it, precludes East Coast's present procedural due process claim. *Alfaro Motors*, 814 F.2d at 888; *see also Tall v. Town of Cortlandt*, 709 F.Supp. 401, 408 (S.D.N.Y.1989) ("Where a plaintiff has an opportunity to contest a defendant's action and fails to do so, there is no violation of [the plaintiff's] due process rights or of 42 U.S.C. § 1983."). Therefore, to the extent that East Coast has alleged a § 1983 action

2. Section 405.05 provides:

Fireworks possessed unlawfully may be seized by any peace officer, acting pursuant to his special duties, or police officer, who must deliver the same to the magistrate before whom the person arrested is required to be taken. The magistrate must, upon the examination of the defendant, or if such examination is delayed or prevented, without awaiting such examination, determine whether the fireworks had been possessed by the defendant in violation of the provisions of section 270.00; and if he finds that the fireworks had been so possessed by the defendant, he must cause such fireworks to be destroyed, in a way safe for the particular type of such fireworks, or to be delivered to the district attorney of the county in which the defendant is liable to indictment or trial, as the interests of justice and public safety may, in his opinion, require. Upon the conviction of the defendant, the district attorney must cause to be destroyed, in a way safe for the particular type of such fireworks, the fireworks in respect whereof the defendant stands convicted, and which remain in the possession or under the control of the district attorney.

N.Y.Penal Law § 405.05.

based on a violation of its procedural due process rights, it is dismissed.[3]

### C. *Substantive Due Process*

East Coast also alleges a § 1983 action by virtue of an alleged violation by the Defendants of the Fourth Amendment as incorporated by the Fourteenth Amendment. The Defendants argue that since the search warrant was valid,[4] the search was valid, and that their conduct in executing the search does not shock the conscience nor impinge upon Fourth Amendment rights.

The Fourth Amendment provides that "The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or the things to be seized." Its provisions protect corporations as well as individuals. *See, e.g., G.M. Leasing Corp. v. United States,* 429 U.S. 338, 353, 97 S.Ct. 619, 629, 50 L.Ed.2d 530 (1977).

A police officer's reliance on a warrant is not objectively reasonable per se merely because a magistrate or judge has found that there was sufficient probable cause to issue the warrant. *See Malley v. Briggs,* 475 U.S. 335, 345, 106 S.Ct. 1092, 1098, 89 L.Ed.2d 271 (1986). Instead, an officer's behavior in applying for a warrant always is subject to review in a § 1983 action, *id.,* as is an officer's conduct in executing a warrant, *Bergquist v. County of Cochise,* 806 F.2d 1364, 1368–69 (9th Cir.1986). Even if a warrant is valid, "[o]fficers may face § 1983 liability for executing a warrant in an unreasonable manner." *Id.* at 1369.

In *Bergquist,* the Ninth Circuit addressed a § 1983 claim premised in part on an improperly conducted search. There, thirteen officers executed a search warrant upon the wrong premises. The description of the premises in the warrant did not match the plaintiffs' premises. Nevertheless, the officers executed the warrant, threatening to shoot the plaintiffs' children's pet dogs, searching a number of buildings, and destroying photography equipment and ceramic art works in the process. *Id.* at 1367. The district court dismissed the plaintiffs' claim for wrongful execution of the warrant.

The Ninth Circuit reversed and held that the district court could review the officers' actions in executing the warrant. In particular, the court held their claim that the destruction of the plaintiffs' property was an unwarranted seizure under the Fourth Amendment, thus violating their Fourteenth Amendment substantive due process rights, was not barred by *Parratt,* 451 U.S. 527, 101 S.Ct. 1908. The officers' conduct in executing the warrant was to be evaluated against a reasonableness standard to determine whether either amendment was violated. *Bergquist,* 806 F.2d at 1369; *see also Morello v. James,* 810 F.2d 344, 348 (2d Cir.1987) ("Intentional, substantive violations of constitutional rights are not subject to the rule of *Parratt*).

East Coast argues that the search warrant lacked probable cause and that the officers' exceeded the scope of the search warrant in seizing its inventory. As to the search warrant, the affidavit upon which it was issued consists of primarily double and triple hearsay statements, including the alleged representation to Louis that the fireworks were to be sold in New York. Additionally, the affidavit fails to state that the conversation between Louis and the Agent took place in New Jersey and that East

---

**3.** However, East Coast's claims are not fully barred for their failure to exhaust their state court remedies. Exhaustion of state remedies is not a prerequisite to the filing of a § 1983 action and is only relevant to the determination of a procedural due process claim. *See Wright v. City of Roanoke Redevelopment and Housing Authority,* 479 U.S. 418, 107 S.Ct. 766, 93 L.Ed.2d 781 (1987); *Patsy v. Board of Regents,*

457 U.S. 496, 102 S.Ct. 2557, 73 L.Ed.2d 172 (1982); *Monroe v. Pape,* 365 U.S. 167, 81 S.Ct. 473, 5 L.Ed.2d 492 (1961).

**4.** This argument relies on the previous criminal court proceedings. However, that determination is inapplicable to the present proceeding. *See supra.*

Coast was a duly licensed importer of fireworks. East Coast argues that a question of fact thus exists concerning whether there was sufficient probable cause to support the issuance of the search warrant.

" '[O]nly the probability, and not a prima facie showing, of criminal activity is the standard of probable cause.' " *Illinois v. Gates*, 462 U.S. 213, 235, 103 S.Ct. 2317, 2330, 76 L.Ed.2d 527 (1983) (quoting *Spinelli v. United States*, 393 U.S. 410, 419, 89 S.Ct. 584, 590, 21 L.Ed.2d 637 (1969)). A reviewing court must afford the original magistrate's determination "great deference," *United States v. Leon*, 468 U.S. 897, 914, 104 S.Ct. 3405, 3416, 82 L.Ed.2d 677 (1984), and presume that the search warrant is valid, *see Franks v. Delaware*, 438 U.S. 154, 171, 98 S.Ct. 2674, 2684, 57 L.Ed.2d 667 (1978); *Rivera v. United States*, 928 F.2d 592, 602–05 (2d Cir.1991). Moreover, "[m]ultiple hearsay in an affidavit may be considered in establishing probable cause if, under all the circumstances, the hearsay statements can reasonably be said to be trustworthy," *United States v. Kuntz*, 504 F.Supp. 706, 710 (S.D.N.Y. 1980), and the mere omission of information from an affidavit will not defeat a finding of probable cause if there still is sufficient information to support such a finding. *Franks*, 438 U.S. at 171, 98 S.Ct. at 2684.

The multiple hearsay within the affidavit at issue here consists primarily of the officer swearing out the warrant stating what other police officers told him. The magistrate was entitled to rely upon these observations of the police officers in making a probable cause determination. *United States v. Ventresca*, 380 U.S. 102, 111, 85 S.Ct. 741, 747, 13 L.Ed.2d 684 (1965); *United States v. Yu*, 90 Cr. 47, 1991 WL 222093 (S.D.N.Y. Oct. 17, 1991). Moreover, that the affidavit fails to state that the conversation between Lewis and the Agent took place in New Jersey is immaterial. The affidavit stated that a sale of $10,000 worth of fireworks was contemplated and that the Agent told Louis "the fireworks were intended for sale in Manhattan." Even though East Coast contests that the Agent never told Louis the fireworks were to be sold anywhere in New York State, under the totality of the circumstances, it has failed to make the type of showing •necessary to upset the presumption of validity a search warrant enjoys. *See Franks*, 438 U.S. at 171–72, 98 S.Ct. at 2684–85.

However, the Defendants' argument that because the search warrant was validly issued, they cannot be liable must fail. East Coast contends that the Defendants violated their substantive due process rights in the way in which they executed the warrant. After the sale of $10,000 worth of fireworks, East Coast's entire inventory in Newburgh was seized by 50–75 New York City Police Officers and taken away in 20 trucks. The intended scope of the seizure in the search warrant is ambiguous. It authorizes the seizure of "certain property . . . , to wit, fireworks, which property is evidence of the crime Unlawfully Dealing with Fireworks," and can be read as authorizing the seizure of anywhere from $10,000 to an unlimited amount of fireworks. Additionally, many of the underlying facts concerning the terms of the original sale of fireworks upon which the seizure was based, including whether the agent ever indicated that he intended to sell the fireworks in New York City and whether the entire contents of the three bunkers were offered for sale, are hotly contested. Summary judgment is precluded and East Coast is entitled to pursue this substantive due process claim, *Bergquist*, 806 F.2d at 1369; *cf. Brady v. Town of Colchester*, 863 F.2d 205, 215 (2d Cir.1988) ("substantive due process assures property owners of the right to be free from arbitrary or irrational zoning actions"); *Narumanchi v. Board of Trustees*, 850 F.2d 70, 72–73 (2d Cir.1988) (dismissal of wrongful termination procedural due process claim for failure to submit to grievance procedures proper, but dismissal of substantive due process claim based upon alleged violation of First Amendment not proper).

### D.  Suable Entities

■ The Police Department and The Property Clerk move for dismissal on the ground that neither is a suable entity.

The New York City Charter provides: All actions and proceedings for the recovery of penalties for the violation of any law shall be brought in the name of the City of New York and not in that of any agency, except where otherwise provided by law.

N.Y. City Charter § 396.

As an agency of the City, the Police Department is not a suable entity. Likewise, because it is a subdivision of the Police Department, the Property Clerk also is not a suable entity. The claims against them are dismissed. *Stovall v. City of New York*, 87 Civ. 4961, slip. op. at 7 n. 3, 1988 WL 249389 (S.D.N.Y. Dec. 6, 1988); *Martin v. City of New York*, 627 F.Supp. 892, 894 n. 2 (E.D.N.Y.1985).

### E.  Municipal Liability

The City argues that it cannot be held liable for the acts of the police officers under a theory of *respondeat superior*, and that East Coast has failed to establish any facts providing a basis for municipal liability under § 1983.

In *Monell v. Department of Social Services*, 436 U.S. 658, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978), the Supreme Court held that "a local government may not be sued under § 1983 for an injury inflicted solely by its employees or agents. Instead, it is when execution of a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflicts the injury that the government as an entity is responsible under § 1983." *Id.* at 694, 98 S.Ct. at 2037. The Court explicitly rejected the imposition of liability upon municipalities solely through *respondeat superior.* Therefore, if the City can be held liable, it must be because there was some municipal policy at play that led to the deprivation of East Coast's rights, if any.

■ *City of St. Louis v. Praprotnik*, 485 U.S. 112, 108 S.Ct. 915, 99 L.Ed.2d 107 (1988), offers several factors to consider when making such a determination. First, who may be considered a policymaker is a question of state law. The power to make policy may be granted directly through legislation or it may be delegated by an official who possesses such power. *Id.* at 124, 108 S.Ct. at 924; *Pembaur v. Cincinnati*, 475 U.S. 469, 483, 106 S.Ct. 1292, 1300, 89 L.Ed.2d 452 (1986) (plurality opinion). If it is alleged that authority has been delegated in a particular situation, then a court is to turn to a number of other factors, including: (1) whether the authority at issue is the authority to make final municipal policy; (2) whether authorized policymakers approved a subordinate's decision and basis for it; and (3) whether the official setting the policy is responsible for policy in that area of the municipality's business. *Praprotnik*, 485 U.S. at 123, 127, 108 S.Ct. at 923, 925.

In making its analysis in *Praprotnik*, the Court noted that "[s]imply going along with discretionary decisions made by one's subordinates ... is not a delegation to them of the authority to make policy." It added that "[i]t would be a different matter if a particular decision by a subordinate was cast in the form of a policy statement and expressly approved by the supervising policy maker." *Id.* at 130, 108 S.Ct. at 927. The Court went on to hold that the plaintiff there had failed to make out a § 1983 claim of municipal liability for his having been fired. *See also Pembaur*, 475 U.S. at 469 n. 12, 106 S.Ct. at 1294 n. 12 (plurality opinion) (sheriff may have discretion to hire and fire employees without being the official responsible for establishing employment policy, but is policymaker with respect to law enforcement practices).

■ The situation here is more akin to the Court's latter observation. First, it should be noted that the New York City Charter designates the Police Commissioner as a policymaker. See N.Y. City Charter § 434. It appears from the events at issue that the Commissioner delegated the policymaking authority here to Chief Johnston. Chief Johnston authored the memorandum that set off the events in question.

Inspector Biehler carried out that directive and orchestrated the seizure of the inventory. This by no means appears to be a random, unauthorized act by a single police officer, *see, e.g., City of Oklahoma City v. Tuttle,* 471 U.S. 808, 105 S.Ct. 2427, 85 L.Ed.2d 791 (1985). Rather, it appears to have been a large-scale operation, involving numerous high-level officers, operating pursuant to Chief Johnston's directive. *Pembaur,* 475 U.S. at 485–85, 106 S.Ct. at 1301. Moreover, the operation appears to have been effectuated pursuant to a stated policy of the Police Department. There is therefore a question of fact concerning whether the Police Department's actions should give rise to municipal liability, and the City's motion for summary judgment on this ground is denied. *See also City of Canton, Ohio v. Harris,* 489 U.S. 378, 389, 109 S.Ct. 1197, 1205, 103 L.Ed.2d 412 (1989) (municipal liability attaches where deliberate choice made by policymakers to follow a course of action is made).

### F. *Punitive Damages*

■ In *City of Newport v. Fact Concerts, Inc.,* 453 U.S. 247, 101 S.Ct. 2748, 69 L.Ed.2d 616 (1981), the Supreme Court held that "a municipality is immune from punitive damages under 42 U.S.C. § 1983." *Id.* at 271, 101 S.Ct. at 2762. To the extent that East Coast seeks punitive damages from the City under § 1983, those claims are thereby dismissed.

### G. *Qualified Immunity*

■ " '[W]hether an official protected by qualified immunity may be held personally liable for an allegedly unlawful official action generally turns on the "objective legal reasonableness" of the action assessed in light of the legal rules that were "clearly established" at the time it was taken.' " *Washington Square Post No. 1212 v. Maduro,* 907 F.2d 1288, 1291 (2d Cir.1990) (quoting *Anderson v. Creighton,* 483 U.S. 635, 639, 107 S.Ct. 3034, 3038, 97 L.Ed.2d 523 (1987)). The focus is on whether a reasonable officer could have

believed her actions to have been lawful in light of clearly established law and the information available to her. *Id.*

■ Officer Vazquez argues that she is entitled to qualified immunity in that she relied upon the direction of counsel in drafting and executing the warrant. An Assistant Manhattan District Attorney drafted the search warrant application. The same Assistant District Attorney was present when the warrant was executed and help direct the assemblage of police personnel. A lawyer from the Police Department also was present to offer advice. Moreover, it seems likely that higher-ranking police officials were actually in charge of the seizure, and that Officer Vazquez merely carried out their on-site orders. Because she was entitled to rely on the advice of counsel and she did not exceed that advice, Officer Vazquez is entitled to qualified immunity. *Arnsberg v. United States,* 757 F.2d 971, 981–82 (9th Cir.1985), *cert. denied,* 475 U.S. 1010, 106 S.Ct. 1183, 89 L.Ed.2d 300 (1986). The claims against her are therefore dismissed.

## II. THE STATE LAW CLAIMS

### A. *Preclusion*

The complaint alleges several state common law causes of action, including conversion, trespass, willful misconduct and negligence. For the same reasons set forth above with respect to the § 1983 claim, East Coast is not precluded from pursuing these claims.

### B. *Conversion*

■ The Defendants also argue that East Coast's conversion claim should be dismissed since East Coast did not have a superior right of possession when the fireworks were destroyed.[5] Under New York State law, "[c]onversion is any unauthorized exercise of dominion or control over property by one who is not the owner of the property which interferes with and is in defiance of a superior possessory right of

---

5. The Defendants have failed to brief adequately whether the other state law claims are cognizable. Absent a full briefing, the Court will not dismiss or grant summary judgment against these claims.

another in the property." *Meese v. Miller,* 79 A.D.2d 237, 436 N.Y.S.2d 496, 500 (4th Dep't 1981).

In *Mubarez v. State,* 115 Misc.2d 57, 453 N.Y.S.2d 549, 554 (Ct.Cl.1982), the court dismissed a conversion claim brought on behalf of a corporation based upon the seizure of $2500 by tax agents during a lawfully executed search. In doing so, it noted that the plaintiff's property interest was interfered with for only a short period of time while the agents tried to determine who owned it and that the money was returned within a short period of time. *Id.*

Likewise, in *Gonzalez v. Port Authority of New York and New Jersey,* 119 A.D.2d 628, 500 N.Y.S.2d 782 (2d Dep't 1986), the plaintiff was arrested by Port Authority police pursuant to an outstanding warrant for his arrest. At the time, he was carrying over $25,000 in cash. The money was vouchered, receipted, and transferred to the City's Property Clerk. The plaintiff was processed by the Police Department and the charges against him eventually dismissed. His suit for conversion was dismissed because the Port Authority had transferred the money to the Property Clerk in good faith, and thus no longer had possession. *Id.* at 783–84.

Here, however, East Coast challenges the legality of the seizure of its entire inventory. Whether or not the Defendants' conduct in executing the seizure was reasonable is still a question of fact before this Court. *See supra.* Moreover, the above two cases are readily distinguishable. In *Mubarez,* the seized money was returned to the plaintiff after a short period of time while in *Gonzalez* it was lawfully transferred to another government agency. Here, the Defendants retained possession of the fireworks until they destroyed the fireworks. Therefore, the cases do not apply and whether the Police Department had a superior right of possession when the property was destroyed is still a question of fact precluding summary judgment.

## III. AMENDMENT

East Coast seeks to amend its original complaint to add six new defendants [6] and to state its First Claim for Relief with more particularity. Rule 15(a) of the Federal Rules of Civil Procedure allows a party to amend its pleading once a responsive pleading has been served only upon leave of court. Nevertheless, "leave shall be freely given when justice so requires."

The Defendants oppose this motion. They argue that the proposed amendments will be futile since all six of the proposed defendants are either immune from liability or not proper parties. *See, e.g., Foman v. Davis,* 371 U.S. 178, 182, 83 S.Ct. 227, 230, 9 L.Ed.2d 222 (1962); *Albany Insurance Co. v. Esses,* 831 F.2d 41, 45 (2d Cir.1987); *Department of Economic Development v. Arthur Andersen & Co.,* 739 F.Supp. 804, 807 (S.D.N.Y.1990).

The Court is not prepared at this stage to determine whether each of the defendants East Coast seeks to add is entitled to immunity. More than one is alleged to have been involved in directing the Police Department's activities during the day the seizure took place, and the extent of any immunity is not clear. East Coast's motion to amend its pleading may well not be futile and is therefore granted.

## Conclusion

For the reasons set forth above, to the extent that East Coast's § 1983 claim seeks relief for an alleged violation of procedural due process, it is dismissed pursuant to Rule 56. East Coast is entitled to pursue its substantive due process claim based upon the execution of the search warrant and the seizure of the fireworks. Any claim for punitive damages against the City is also dismissed pursuant to Rule 12. The Police Department and the Property Clerk are not suable entities and Officer Vazquez is entitled to qualified immunity, so the claims against them are dismissed. The Defendants' remaining motions are denied.

---

**6.** They are: District Attorney Robert Morgenthau, Assistant District Attorney Robert Viteretti, Karen Pakstis, Inspector Frank Biehler, Lieutenant Michael Walsh, and Detective Mitchell Kolpan.

East Coast's motion to amend its complaint is granted.

It is so ordered.